**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **SECURITES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **CAUSE NO. 4:11cv655** |
| **JAMES G. TEMME,** **STEWARDSHIP FUNDS, LP** **Defendants.** | |

**JAY TEMME'S EMERGENCY MOTION TO REPLACE**
**THE RECEIVER AND MOTION FOR PROTECTIVE ORDER**

Defendant Jay Temme respectfully requests that the Court remove the current receiver (the "Receiver"), appoint a new receiver, and enter a protective order governing the conduct of the receiver to protect Mr. Temme's rights and to prevent the receiver from denying him his right to counsel based on the threat of claiming that Mr. Temme is not cooperating. This request is based on the conduct of the Receiver in the first three days of his appointment as the receiver of Mr. Temme's assets, as described below, and the Court's power to supervise its own appointment of a receiver.

**I.**

**BACKGROUND**

The background of this request is that Mr. Temme is not only a defendant in this civil action, but, as the SEC and the Receiver know, he is also the target of a federal criminal investigation by the FBI. The SEC and the FBI are working together at least in terms of control of documents. Undersigned counsel represents Mr. Temme both in this proceeding and in the criminal investigation.

Jay Temme's Emergency Motion to Remove Receiver And For Protective Order--page 1

On this past Wednesday, November 2, 2011, after extensive negotiation with the SEC, Mr. Temme agreed to a receivership over his personal assets even though there is no judgment against him and none of his assets have been shown to be the product of even alleged wrongdoing. The receivership gives the Receiver extremely broad authority over almost every aspect of Mr. Temme's life. Among other things, it requires Mr. Temme to give the Receiver the key to Mr. Temme's house and authorizes the Receiver to enter it at any time, it permits the Receiver to direct the Postal Service to send all of Mr. Temme's personal mail to the Receiver who can open it and keep it, and most importantly, it conditions Mr. Temme's ability to use his own money for living expenses and to pay his attorneys on Mr. Temme's "cooperation" with the Receiver.

During the negotiations with the SEC, both the SEC and the SEC took the position that these positions were not negotiable and that Mr. Temme simply had to trust the Receiver to exercise his powers with discretion and fairness. Regarding cooperation, though, the Receiver personally warned Mr. Temme that he would make Mr. Temme's life "extremely difficult," or words to that effect, if he did not "cooperate" fully with the Receiver. Mr. Temme is a soft-spoken man, and he expressed his willingness to do so.

## II.
## THE RECEIVER'S CONDUCT

Yesterday, Thursday, November 3, 2011, knowing full well that Mr. Temme is represented by counsel, the Receiver, who is a partner at the law firm of Bryan Cave, made *ex parte* contact with Mr. Temme without contacting Mr. Temme's counsel first. The Receiver ordered Mr. Temme to bring the Receiver his computer to be imaged and to come to the Receiver's office the following day at a specific time to answer questions. The Receiver did not

notify Mr. Temme's counsel of any of this or in any manner attempt to determine if Mr. Temme's counsel wanted to or could attend at that time.

At approximately 5:20 a.m. this morning, counsel for Mr. Temme checked his iPhone and discovered an email from Mr. Temme in which Mr. Temme related the Receiver's contact with Mr. Temme and the Receiver's demand. Mr. Temme's counsel responded to Mr. Temme that the Receiver should go through counsel and that counsel would contact the Receiver and handle the request.

At approximately 5:32 a.m., counsel for Mr. Temme sent the following email to the Receiver and his cocounsel:

```
Mr. Temme informed me that one of you contacted him directly yesterday.  As you
know, I represent him.  Nothing in his agreement vitiates the rule that a lawyer
may not contact a represented person directly.  At least for now, please contact
me instead of contacting him directly.  I would be glad to help you.
```

The Receiver responded at approximately 6:32 a.m. The Receiver's email is set forth below in full. In it, the Receiver insisted upon the right to engage in *ex parte* contact with Mr. Temme and further insisted that Mr. Temme had to meet with the Receiver to answer his questions when and where the Receiver demands whether Mr. Temme's counsel could be there or not. The email follows:

```
Mr. Helms,


I contacted Mr. Temme in my capacity as receiver and without counsel involved.
It is my expectation that this is not a violation of any ethical rule or the
```

receivership order.  Please confirm that you agree.  Obviously, if we were to

take testimony or otherwise ask Mr. Temme to sign documents that would be

different.


In the meantime, Mr. Temme is to meet me at my office at 11:00 a.m. this morning

at my offices to turn over his computer and to discuss this matter generally.

You are welcome to attend.


Keith

Notably, despite inviting Mr. Temme's counsel to attend, the Receiver did not ask, and

has never asked, whether Mr. Temme's counsel wanted to attend or would be able to attend.

The Receiver simply insisted that the meeting would happen regardless.  In other words, the

Receiver was not only insisting that he had the ability to have all the *ex parte* contact he wants,

but that he had no intention of trying to make sure Mr. Temme had the right to counsel.


In light of the power with which the Receiver has been entrusted and the Receiver's prior

veiled threat about making Mr. Temme's life "extremely difficult," or words to that effect, if he

did not "cooperate," counsel for Mr. Temme was alarmed at this assertion that Mr. Temme had

no right to have counsel notified or present.  Counsel therefore responded at approximately 6:35

a.m. with the following email:


I do not agree.  There is no exception to the ethical rules for receivers.  You

are a lawyer, and the rules apply to you.  I expect you to follow the ethical

rules that govern our profession.   Please let me know if we need to go to the

court about this. Mr Temme is not going to meet with you until this issue is
resolved.


Counsel for Mr. Temme therefore invited the Receiver to try to resolve the issue.  Indeed,

in the first email, counsel for Mr. Temme indicated that his request to have the Receiver contact

counsel was "at least for now," but not necessarily in the future if trust was reached.  The

Receiver also knew full well that Mr. Temme is the subject of a criminal investigation.  The

Receiver is a lawyer.  Yet, the Receiver insisted on being able essentially to cross-examine Mr.

Temme on the same subject as the criminal investigation, _**without Mr. Temme's counsel present**_,

after which anything Mr. Temme said could be used against him.  In these circumstances, it is

incredible that the Receiver would contend that Mr. Temme had no right to counsel.

Even if the Receiver believed that he had the right to contact a represented person

directly, and even if he somehow believed he had the right to deny the subject of a criminal

investigation the right to counsel, he could have at least, as a matter of professional courtesy,

offered to contact Mr. Temme's counsel first and to schedule a meeting at a time when Mr.

Temme's counsel could be there.  He did not and never has.  Instead of doing that, the Receiver

responded with a threat.  His email reads in its entirety:

Please give me dates next week for your client to testify at a deposition.

This email was clearly a threat of retaliation.  It is the kind of threat that lawyers make.  It

is saying, "OK, I'll show you."  Indeed, asking for a deposition is inconsistent with the Receiver's

position that he is not acting as a lawyer.  Moreover, the Receiver is fully aware that, in addition

to the cost and expense of a deposition, as the subject of a criminal investigation, the

consequences of  a deposition to Mr. Temme at this point are severe.  As the Receiver must have

known, given Mr. Temme's lack of access, so far, to the documents he needs to defend himself,

Mr. Temme would have to assert his Fifth Amendment rights in a deposition, thus making the deposition a meaningless exercise from an evidentiary standpoint, but costly to Mr. Temme because he would have to invoke his Fifth Amendment rights, which could then be used to create prejudice against him.

It is also a threat because it is such an obviously unnecessary escalation. Counsel for Mr. Temme had never refused to have Mr. Temme meet with the Receiver or to answer the Receiver's questions as long as the Receiver goes through his counsel and gives his counsel an opportunity to be present--clearly reasonable requests that are not burdensome in the least. This is the first time since his appointment over Mr. Temme's assets that the Receiver has requested *anything*. Mr. Temme's counsel has never even inconvenienced the Receiver in any way and is more than willing to accommodate the Receiver's schedule. There was absolutely no reason to threaten a deposition except to try to intimidate Mr. Temme and his counsel.

## III.

## ARGUMENT

In light of the Receiver's power over Mr. Temme's assets and his ability to earn a living and his access to reasonable living expenses and attorney's fees, and in light of the Receiver's veiled threat to Mr. Temme on Wednesday of the consequences of his lack of "cooperation," the Receiver's insistence that Mr. Temme has no right to have counsel present and no right to have his counsel notified is alarming and requires relief from the Court. The Receiver's subsequent heavy-handed escalation of the situation with an unnecessary threat of retaliation justifies this motion--especially since the Receiver was just appointed on Wednesday afternoon and neither Mr. Temme nor his counsel have done anything to deserve this.

Mr. Temme has cooperated with the SEC and the Receiver.  Even though there is no judgment against him, and even after the SEC froze his parents' joint account and his son's lunch account at Plano High School, Mr. Temme agreed to the appointment of a receiver over personal assets that have not been shown to be linked in any way to even any alleged wrongdoing.  The Receiver has an extreme degree of power over Mr. Temme and his family.  In the agreed receivership order, Mr. Temme voluntarily placed his trust in the Receiver.  The Receiver's power must be exercised with fairness and professional courtesy and not in a manner that is abusive or heavy handed.  Mr. Temme's counsel now justifiably fears that the Receiver will retaliate further against Mr. Temme if Mr. Temme asserts his right to have counsel present.  Indeed, just minutes ago, counsel for the Receiver (another lawyer at the Receiver's firm) accused Mr. Temme's counsel of not cooperating by taking the positions in this motion--thus making further threats.

The Court has the equitable power to oversee its appointment of the Receiver.  Since the Receiver has just been appointed, there is no burden associated with appointing a new receiver.  There are dozens of qualified persons who could immediately step in and be a receiver.  This individual Receiver and his law firm have no right to get this particular appointment as a Receiver.  Mr. Temme, on the other hand, has important rights that are at stake and that are threatened by this Receiver.  The Court should therefore appoint a new receiver before the case moves further.

In addition, or if the Court does not appoint a new receiver, the Court should enter a protective order requiring the receiver, pending further court order, not to contact Mr. Temme directly without Mr. Temme's counsel's consent and not to require Mr. Temme to answer questions or to make statements without Mr. Temme's counsel present as long as Mr. Temme's

counsel does not make unreasonable scheduling requests. In addition, Mr. Temme requests that the Court admonish the Receiver and the SEC not to retaliate against Mr. Temme or his counsel for Mr. Temme's assertion of his rights.

Counsel for Mr. Temme does not make these requests lightly or as some kind of procedural game. Counsel for Mr. Temme is fully aware of the possibility that this motion itself could provoke retaliation, but Mr. Temme's counsel is extremely concerned for Mr. Temme's most basic rights as the target of a criminal investigation.

The SEC may try to argue that the Receiver's emails do not really take the position that Mr. Temme did not have the right to counsel. This, however, would be inconsistent with the position that the SEC took during the conference on this motion. During the conference, after counsel for Mr. Temme had listed the bases for the motion, an attorney for the SEC called this motion "frivolous." One attorney for the SEC claimed that by trying to talk undersigned counsel out of filing this motion, he was just trying to save undersigned counsel from filing a frivolous motion--in other words, vaguely threatening Rule 11 sanctions. Thus, the SEC fully endorsed the Receiver's conduct and the position that Mr. Temme has no right to counsel in connection with the Receiver's activities. Not once did the SEC's lawyers suggest otherwise.

Moreover, and perhaps most disturbing, not once has the SEC or the Receiver suggested any willingness *voluntarily* to go through counsel when communicating with Mr. Temme or to make sure Mr. Temme's counsel can be present, even though they cannot possibly contend that this would cause some sort of inconvenience. Instead, they have made threats and acted in a heavy-handed manner designed to intimidate Mr. Temme and his counsel as described above. That is more than enough to justify the relief requested in this motion under the Court's equitable powers.

Mr. Temme therefore respectfully requests that the Court conduct an evidentiary hearing in court on the record and that the Court replace the receiver and enter the protective order described above.

Date: November 4, 2011

Respectfully submitted:

*/s/ John Helms, Jr.*_____
John Helms, Jr.
Texas Bar No. 09401001
John@northtexastriallawyers.com
Ritch Roberts III
Texas Bar No. 24041794
Ritche@northtexastriallawyers.com
Manuel Diaz
Texas Bar No. 24053639
Manuel@northtexastriallawyers.com
**Helms, Roberts & Diaz LLP**
6060 N. Central Expressway, Suite 560
Dallas, Texas 75206
Tel: (214) 800-2086
Fax: (214) 800-2057
COUNSEL FOR JAMES G. TEMME

## CERTIFICATE OF CONFERENCE

This certifies that, on today's date, I conferred with counsel for the SEC and counsel for the Receiver concerning the disposition of this motion. Counsel for the SEC and the Receiver oppose this motion. Therefore, this motion is opposed. I also attempted to confer with counsel for Stewardship Funds but was not able to reach him. In trying to confer with him, I forwarded counsel for Stewardship Funds a draft of this motion so that he could read it and understand what the motion is about. He has also been served with this.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that pursuant to Local Rule CV-5(a)(7) a true and correct copy of the above and foregoing document has been served via e-mail on November 4, 2011 to all counsel of record who are deemed to have consented to electronic service. Any other counsel of record will be served by electronic mail and first class mail.

*/s/ John Helms, Jr.*
John Helms, Jr.