# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| v. | § § | Case No. 4:11-CV-655 Judge Clark/Judge Mazzant |
| JAMES G. TEMME and STEWARDSHIP FUND, LP | § § § | |

## ORDER DENYING LIFTING STAY

Pending before the Court is Nonparties MDA Realty Holdings, LLC, MVB Realty Holdings, LLC, LF Realty Holdings, LLC and F & B Note Holding, LLC's (collectively, the "Finch and Barry Group") Amended Motion for Relief from Stay (Dkt. #96). Having considered the relevant pleadings and the argument of counsel, the Court finds that the motion should be denied.

The Finch and Barry Group requests that the Court declare that the stay orders entered in this case do not prohibit them from proceeding with an investigation of potential claims or the filing of a lawsuit against nonparties Home Solutions Advisors, LLC, Home Solutions GP, LP, Home Solutions Partners I, LP, Home Solutions Partners II, LP, Home Solutions Partners III, LP, Harbour Portfolio I, LLC, Harbour Portfolio II, LLC, Charles A. Vose, III ("Vose"), and perhaps other Home Solutions affiliates unrelated to this SEC action (collectively, the "Home Solutions Affiliates" or "Affiliates").

## Background

This matter came on before me on the 27th day of October, 2011, on the application of Plaintiff Securities and Exchange Commission ("Commission") for the appointment of a Receiver for Defendant James G. Temme ("Temme") and entities under his control. On October 14, 2011, the Court entered a temporary restraining order that, among other things, froze assets of Temme and

entities under his control and set a hearing to occur on October 27, 2011, at 2:00 p.m. to consider Plaintiff's motion for preliminary injunction and the appointment of a Receiver. On October 27, 2011, Plaintiff and Temme filed an agreed motion for the appointment of a receiver over any entity Temme owns or controls, directly or indirectly, including without limitation Stewardship Advisors, LLC, Stewardship Advisors, LP and Stewardship Asset Management Genpar I, LLC. The Receivership Entities include all entities directly or indirectly controlled by Temme or Stewardship Fund, LP, including, but not limited to: Temme, individually; Stewardship Fund, LP; Stewardship Advisors, LLC, d/b/a Stewardship Advisors, LP; Stewardship Asset Management; Genpar I, LLC; Stewardship Group, LLC; Destiny Fund, LP; and Stewardship Management, LP.

On October 28, 2011, the Court appointed Keith Miles Aurzada Receiver for the Receivership Assets and Receivership Records (collectively, "Receivership Estate") (Dkt. #24).

The Order provided as follows:

3. The duties of the Receiver shall be specifically limited to matters relating to the Receivership Estate and unsettled claims thereof remaining in the possession of the Receiver as of the date of this Order. Nothing in this Order shall be construed to require further investigation of Receivership Estate assets heretofore liquidated and/or distributed or claims of the Receivership Estate settled prior to issuance of this Order. However, this paragraph shall not be construed to limit the powers of the Receiver in any regard with respect to transactions that may have occurred prior to the date of this Order.
4. Until the expiration date of this Order or further Order of this Court, the Receiver is authorized to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate.
5. As of the entry of this Order, the Receiver is specifically directed and authorized to perform the following duties:
(a) Maintain full control of the Receivership Estate with the power to retain or remove, as the Receiver deems necessary or advisable, any officer, member, director, independent contractor, employee, or agent of the Receivership Estate;
(b) Collect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated, the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate with full power to collect, receive, and take possession of,

2

without limitation, all goods, chattel, rights, credits, monies, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the Receivership Estate;

(c) Institute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate. All such actions shall be filed in this Court;

(d) Obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, causes of action, or employees of the Receivership Estate. The attendance of a person or entity for examination and/or production of documents may be compelled in a manner provided in Rule 45, Fed. R. Civ. P., or as provided under the laws of any foreign country where such documents, books, records, accounts, deposits, or testimony may be located;

(e) Without breaching the peace and, if necessary, with the assistance of local peace officers or United States marshals to enter and secure any premises, wherever located or situated, in order to take possession, custody, or control of, or to identify the location or existence of, Receivership Estate assets or records;

(f) Make such ordinary and necessary payments, distributions, and disbursements from the Receivership Estate as the Receiver deems advisable or proper for the marshaling, maintenance, or preservation of the Receivership Estate. Receiver is further authorized to contract and negotiate with any claimants against the Receivership Estate (including, without limitation, creditors) for the purpose of compromising or settling any claim. To this purpose, in those instances in which Receivership Estate assets serve as collateral to secured creditors, the Receiver has the authority to surrender such assets to secured creditors, conditional upon the waiver of any deficiency of collateral;

(g) Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate;

(h) Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as Receiver judges necessary to perform the duties set forth in this Order and to compensate them from the Receivership Assets;

(i) Institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve the value of the Receivership Estate, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

(j) Preserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants;

3

(k) Promptly provide the United States Securities and Exchange Commission and other governmental agencies with all information and documentation they may seek in connection with their regulatory, investigatory or prosecutorial activities;

(l) Prepare and submit periodic reports to this Court and to the parties as directed by this Court; and

(m) File with this Court requests for approval of reasonable fees to be paid to the Receiver and any person or entity retained by him and interim and final accountings for any reasonable expenses incurred and paid pursuant to order of this Court. Such fees and expenses shall be paid, if approved by the Court, from the Receivership Estate.

7. Any and all civil actions or other proceedings against any of the Temme controlled entities are hereby stayed. Any person or entity wishing to continue to pursue or initiate a civil action or other proceeding against any of the Temme-controlled entities may do so only after obtaining permission from this Court to do so. Any claim or suit that seeks recovery from Receivership Assets, or that is hereinafter filed against any of the Temme-controlled entities, or the Receiver, shall be filed in this Court. This provision shall not apply to any criminal proceedings.

8. Creditors and all other persons are hereby restrained and enjoined from the following actions, except in this Court, unless this Court, consistent with general equitable principals and in accordance with its ancillary equitable jurisdiction in this matter, orders that such actions may be conducted in another forum or jurisdiction:

(a) The commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or employee related to the Receivership Estate, arising from the subject matter of this civil action; or

(b) The enforcement, against the Receiver, or any of the Temme-controlled entities, of any judgment that would attach to or encumber the Receivership Estate that was obtained before the commencement of this proceeding.

8. Creditors and all other persons are hereby restrained and enjoined, without prior approval of the Court, from:

(a) Any act to obtain possession of the Receivership Estate assets;

(b) Any act to create, perfect, or enforce any lien against the property of the Receiver, or the Receivership Estate;

(c) Any act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate; or

(d) The set off of any debt owed by the Receivership Estate or secured by the Receivership Estate assets based on any claim against the Receiver or the Receivership Estate (Dkt. #24).

*See* Agreed Order Appointing Receiver Over Entities Under Control of James G. Temme (Dkt. #24); Agreed Order Appointing Receiver Over Stewardship Fund, LP, and Related Entities (Dkt. #25); and Order Appointing Receiver Over James Temme (Dkt. #30) (together, the "Receiver Orders") (directing Receiver to "immediately take and have complete and exclusive control,

possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate").

## Background Facts Related to Finch and Barry Group

On April 26, 2011, Home Solutions Partners, LP[1] and Stewardship Fund, LP entered into an agreement entitled "Charged Off, Non-Performing Note Sale, Mortgage and Real Estate Owned Agreement" (the "Agreement"). The Agreement was allegedly signed by Temme and Vose[2]. The Agreement purports to transfer various mortgages that were the property of various Affiliates.

On April 27, 2011, the Finch and Barry Group[3] wire transferred $3,139,667.20 to an account of Home Solutions Partners I, LP[4] to purchase residential mortgages that were purportedly being sold by Home Solutions Partners, LP, and that were ultimately to be owned by Equitas Housing Fund III, LP ("Equitas"). The Home Solutions Partners I, LP bank account had been a dormant account, and the signatory on the account was Temme. The monies wired by the Finch and Barry Group to the Home Solutions account did not go through Equitas. Instead, the monies wired to Home Solutions Partners I, LP were transferred, on the same day the monies were received, by Temme to Destiny Fund II, LP, a Receivership entity. The monies were then transferred per Temme's instuctions to

---

[1] Home Solutions Partners, LP is not part of the Affiliates and may not even be a legal entity, but something created by Temme.

[2] Vose asserts that he never signed the Agreement and was not aware of the Agreement until August 19, 2011. Vose asserts that his signature on the Agreement was not signed by him nor was anyone authorized else to sign on his behalf.

[3] The funds were actually sent by 48th Street Holdings LLC, which is the entity used by F&B Note Holding, LLC to fund transactions.

[4] The wire transfer request was to Home Solutions Partners, LP, which is the entity the Finch and Barry Group had an agreement with and the entity that was supposed to receive the wire transfer funds. However, in fact, the monies were actually transferred to Home Solutions Partners I, LP.

5

Home Solutions Partners III, LP and Harbour I and Harbour II.[5]

Temme was involved in the subject transaction. Temme was a principal of Stewardship Fund, LP, which was to be a member of Equitas' named general partner, Equitas Housing Fund III, Genpar, LLC, but it appears that this general partner entity was never formed. With regard to the investment, Temme represented to the Finch and Barry Group that Stewardship Fund, LP would close on a contract to buy certain mortgages from Home Solutions Partners, LP, and provide these mortgages to F & B Note Holding, LLC, and that the mortgages would ultimately be assigned to Equitas. Nevertheless, the Finch and Barry Group was instructed to wire its money directly to Home Solutions Partners, LP, a non-existent entity, which it did.

During a hearing conducted on August 30, 2012, the Court heard testimony from Mike Barry ("Barry") from the Finch and Barry Group. Barry never spoke to Vose as part of his due diligence. Barry did not check with the Texas Secretary of State to determine whether Home Solutions Partners, LP was a legitimate Texas entity. Barry did not check the deed records to see if any of the related mortgages were owned by Home Solutions Partners, LP.[6]

On August 23, 2011, an attorney representing the Affiliates informed the Finch and Barry Group that the purported purchase and sale agreement between Stewardship Fund, LP and Home Solutions Partners, LP was fraudulent and forged. The Affiliates claimed that they still owned the mortgages that the purchase and sale agreement purported to convey. On September 21, 2011, the Barry and Finch Group received a letter from another counsel for the Affiliates threatening legal

---

[5] Harbour I and Harbour II have already been released.

[6] It appears to the Court that Barry did not do sufficient due diligence with regard to this transaction. He never spoke to Vose, and a simple check with the Secretary of State would have yielded that Home Solutions Partners, LP, the entity that the Agreement was with, was not a legitimate entity in Texas.

action if the Finch and Barry Group asserted any ownership over the subject mortgages.

On October 11, 2011, the Finch and Barry Group filed their Petition to Investigate Potential Claims in the 366th District Court of Collin County, Texas. Three days later, the Commission brought this action against Temme and Stewardship Fund, LP. On November 17, 2011, there was a hearing in the Rule 202 proceeding, but the Honorable Jay Wheless, of the 366th District Court of Collin County, at the insistence of the Affiliates, informally held that Finch and Barry Group's petition could not go forward until this Court granted relief from the stay established by this Court's orders.

The Finch and Barry Group intend to file claims against the Affiliates for certain direct claims they have against these entities. The following allegations will be made in the state court proceeding against the Affiliates: (1) The Affiliates had been doing business with Temme and Stewardship for several years, and were aware of his fraudulent manner of doing business; (2) The Affiliates had engaged in at least six transactions with Stewardship over a three-year period prior to April, 2011, paying those related entities over $7.7 million for mortgages, but never received assignments in any of these transactions; (3) Home Solutions Partners, LLC had specifically paid Stewardship $1,562,875.00 in a December 2009 transaction in which mortgage assignments were not obtained; (4) The Affiliates were aware that Temme and Stewardship were defrauding investors; there was a lawsuit against Temme and Stewardship which had been pending since October 25, 2010, in Dallas County involving a $5.7 million fraud; (5) The Finch and Barry Group will attempt to show that the Affiliates gave Temme the authority to negotiate to sell, and to sell, its mortgage loans, many of which were serviced for the various Affiliates by Stewardship; (6) The Affiliates gave Temme powers of attorney for these companies to allow assignments of their mortgages; (7) The Finch and Barry Group will attempt to show that the Affiliates had given Temme the authority

7

to sell the 440 mortgages to the Finch and Barry Group; (8) The Affiliates provided Temme with bank accounts in the names of the relevant Home Solutions Affiliates (at least Home Solutions Partners I and III, Harbour Portfolio I and II), allowed Temme to use Stewardship's address on these accounts, allowed him to wire transfer money in and out of these accounts, and otherwise use the accounts to collect monies for the Affiliates, even after learning of Temme's fraudulent manner of doing business with others; (9) the Affiliates must have made (or apparently will contend they made) demands on Temme prior to April 2011, for repayment of alleged "debts" owed to Home Solutions Partners, III ($1,821,306.00); Harbour Portfolio I ($211,785.00), and Harbour Portfolio II ($183,670.00); (10) These Affiliates' bank accounts were then used both to receive the full purchase price of the 440 mortgages directly from the Finch and Barry Group, and then to manipulate most of that money through these accounts to other bank accounts of the Home Solutions Affiliates; and (11) The Affiliates then had prominent law firms send threatening and misleading letters to the Finch and Barry Group to discourage them from asserting ownership of the 440 mortgages they had paid for, and as to which the Affiliate sellers (Home Solutions) had received payment in full.

The Finch and Barry Group intends to assert their direct claims against the Home Solutions Affiliates in state court for Recovery of the 440 mortgages for which they made full, and direct, payment directly to Home Solutions Partners I, LP. They seek damages caused by the effort of the Affiliates to use the described bank accounts and powers of attorney to defraud the Finch and Barry Group, a civil theft claim against the appropriate Home Solutions Affiliates, and an alternative claim for negligence.

On June 20, 2012, the Finch and Barry Group filed their motion for relief from stay[7] (Dkt.

---

[7] The Finch and Barry Group cites the Court to no authority in their motion to support their request. The authority cited is in their reply (Dkt #117).

#96). On August 15, 2012, a joint response was filed by the Home Solutions, Harbour Portfolio and Cavco Entities (Dkt. #106). Also on August 15, 2012, the Receiver filed a response (Dkt. #107). On August 24, 2012, the Finch and Barry Group filed a reply (Dkt. #117). On August 27, 2012, the Affiliate related entities filed a reply (Dkt. #120). On August 29, 2012, the Receiver filed a sur-reply (Dkt. #122). On September 4, 2012, a post hearing brief was filed by the Finch and Barry Group (Dkt. #127).

**Standard**

Courts considering whether to lift a stay of litigation entered pursuant to a receivership order have applied the following three-part test that balances the interests of the receiver and the moving parties: (1) Whether refusing to lift the injunction genuinely preserves the status quo or whether the moving party will suffer substantial injury if it is not permitted to proceed; (2) The time in the course of the receivership at which the motion for relief from the injunction is made; and (3) The merits of the moving party's underlying claim. *SEC v. Wencke*, 622 F.2d 1363, 1373-74 (9th Cir. 1980) (establishing balancing test); *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3d Cir. 2005). Movants have the burden of proving that the balance of these factors weighs in favor of lifting the stay. *Acorn*, 429 F.3d at 450. "The factors enable a district court to remain mindful that '[t]he interests of the Receiver are very broad and include not only protection of the receivership res, but also protection of defrauded investors and considerations of judicial economy' and the purpose of the stay of litigation is 'to give the receiver a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant.'" *United States v. Petters*, No. 08-5348, 2008 WL 5234527, at *3 (D. Minn. Dec. 12, 2008) (quoting *Acorn*, 429 F.3d at 443).

**Analysis**

The first question before the Court is whether the Finch and Barry Group's claims are implicated in the stay entered by the Court. The Court finds that the answer to that question is a clear "Yes." At least a portion of the relief requested by the Finch and Barry Group implicates claims that belong to the Receivership Estate. It is clear that the monies from the Finch and Barry Group were transferred by Temme to an entity that is part of the Receivership Estate-Destiny Fund II, LP. The Finch and Barry Group argues that they only want to pursue direct claims against the Affiliates and have no intention of pursuing Temme and any Temme-related entity. However, the monies transferred by the Finch and Barry Group were transferred by Temme to a receivership entity. The Court does not see how the Finch and Barry Group can pursue claims directly against the Affiliates without implicating the Receivership Estate. To allow the Finch and Barry Group to proceed would require the Receiver to intervene into the state court proceeding.

Moreover, the Finch and Barry Group entered into a contract with an entity that apparently does not exist, and intended to wire monies to this non-existent entity. It appears that this fraud was done by Temme. As it turns out, the monies were actually transferred to a dormant account of one of the Affiliates, but the monies were transferred out of this account, on instructions of Temme, to an entity that is part of the Receivership Estate. Since the monies came into the Receivership Estate, the Receiver should be able to explore what claims to pursue. The Finch and Barry Group asserts that Vose may have been more involved in this transaction than his affidavit indicates. Even if this is true, the Receiver is exploring those issues.[8] Although the Court is sympathetic with the Finch

---

[8] Although the Finch and Barry Group asserts that the Court should not look at the merits of their potential claims, the Court does think it is relevant to look at the merits to determine whether the Receivership Estate is implicated. In this case, the Finch and Barry Group presented no evidence that they ever spoke to anyone with Affiliates. All misrepresentations were made by Temme. There is no allegation that the Affiliates owed any duty to the Finch and Barry Group, especially when there is no evidence that the Affiliates were even aware of the group

and Barry Group as additional victims of Temme, these investors should not receive preferential treatment over other investors.

Since the Court finds that the Court's stay is implicated, the Court must decide whether to grant the Finch and Barry Group's request to lift the stay to allow them to proceed in state court. In their reply, the Finch and Barry Group cite the Court to *Jarrett v. Kassel*, 972 F.2d 1415 (6th Cir. 1992), and *Liberte Capital Group, LLC v Capwill*, 248 F. App'x 650 (6th Cir. 2007) in support of their position. These cases from the Sixth Circuit do not fit the facts we have in this case. Both cases did not involve receiverships by the SEC. Neither case involves injured investors asserting claims against other alleged injured investors based upon the facts asserted in an SEC complaint. Likewise, the cases cited by the other parties do not address the questions before the Court.[9]

Thus, the Court must consider whether refusing to lift the stay preserves the status quo or whether the moving party will suffer substantial injury if it is not permitted to proceed, the time in the course of the receivership at which the motion for relief from the stay is made, and the merits of the moving party's underlying claim. First, the Court considers that this Receivership is in its early stages. Second, although the Court cannot decide the merits of the Finch and Barry Group's claims, the Court finds that based upon the evidence before the Court, any claims against the Affiliates would be weak.[10] The Affiliates did not contract with anyone at the Finch and Barry Group, and it

---

during the relevant time.

[9] The opposing parties cite the Court to *SEC v. Forex*, 242 F.3d 325, 331 (5th Cir. 2001) and *United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996). Both of these cases address the discretion of the District Court to approve Receiver distribution plans. Although both cases stand for the proposition that the District Court has broad discretion, neither case involved the question of lifting a stay so that other parties could pursue actions against third-parties.

[10] The Court is not finding that a claim against Home Solutions Partners, LP would be meritless. In fact, this entity is the party that the Finch and Barry Group contracted with and thought it was transferring money to. The Court would consider lifting the stay to pursue Home Solutions Partners, LP, but that request is not being made, apparently because there is no such entity.

appears that the Finch and Barry Group did not conduct reasonable due diligence before entering into the Agreement. Finally, the Court does not see any significant injury to the Finch and Barry Group by allowing the Receiver to continue to perform his duties and determine what claims to pursue to the benefit of the Receivership Estate.  If the Court allows the state court matter to proceed, the Receiver would have to spend monies to intervene in that matter.  In addition, if the Receiver determines that the Affiliates are merely victims of Temme just like the Finch and Barry Group, the Court should not allow one group of investors to be placed ahead of another set of investors.  If the Receiver ultimately proposes to settle with the Affiliates, the matter will be before the Court and the Finch and Barry Group will have the opportunity to object and be heard.  Thus, when the Court balances the factors, the Court finds that the requests by the Finch and Barry Group to lift the stay should be denied.

It is therefore ORDERED that the Nonparties MDA Realty Holdings, LLC, MVB Realty Holdings, LLC, LF Realty Holdings, LLC and F & B Note Holding, LLC's Amended Motion for Relief from Stay (Dkt. #96) is hereby DENIED.

**SIGNED this 13th day of September, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE