IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** § <br> **Plaintiff,** § <br> § <br> § <br> § Civil Action No. 4:11-cv-655 <br> § <br> **v.** § <br> § <br> **JAMES G. TEMME, and** § <br> **STEWARDSHIP FUND, LP,** <br> **Defendants.** | |

### RECEIVER'S STATUS REPORT
(as of May 28, 2013)

COMES NOW, Keith M. Aurzada as Receiver (the "Receiver") for James G. Temme ("Temme"), Stewardship Fund, LP, and all other entities directly or indirectly controlled by James G. Temme or Stewardship Fund, LP, including, but not limited to Stewardship Advisors, LLC, d/b/a Stewardship Advisors, LP, Stewardship Asset Management Genpar I, LLC, Stewardship Group, LLC, Destiny Fund, LP, and Stewardship Management, LP (collectively, the "Defendants") and hereby files his Receiver's Status Report.

### I.

### BACKGROUND

1. On October 14, 2011, the Securities and Exchange Commission instituted the above-captioned action, alleging that Defendants used fraudulent, or otherwise unlawful, means to raise at least $35 million from investors through the offering and selling of interests in limited partnerships and mortgage notes.

2. On October 14, 2011, the Receiver was appointed as receiver for the Defendants through the Court's entry of the Agreed Order Appointing Receiver Over Entities Under Control

of James G. Temme (Dkt. No. 24), Agreed Order Appointing Receiver Over Stewardship Fund, LP, and Related Entities (Dkt. No. 25), and Order Appointing Receiver Over James Temme (Dkt. No, 30) ("Receiver Orders").  Pursuant to the Receiver Orders, the Receiver is to take exclusive custody and control of all assets and records of, or traceable to, the Defendants.

3. As the Receiver has conducted his investigation, it has become apparent that in offering and selling interests in notes and limited partnerships, the Defendants likely made material misrepresentations to investors regarding the value of the interests, the assets owned or to be purchased on behalf of investors, and the expected returns on such investments.  It has also become apparent that Defendants frequently failed to complete basic due diligence and complete the necessary paperwork to acquire and sell the interests and notes they purportedly sold to investors.  Moreover, the assets that were allegedly transferred to Defendants (in the form of promissory notes secured by residential real estate) frequently were the subject of municipal enforcement actions and liens for unpaid assessments and taxes.  Hundreds of such notices remained unopened.  Furthermore, the Receiver took possession of many check from borrowers that had not been cashed, some many months old.

4. The Receiver is working to identify, locate, and secure assets owned by Defendants.

## II.

## Summary of Operations of Receiver

### A. Employment of Professionals

5. Immediately following his appointment, it became necessary for the Receiver to employ Bryan Cave LLP ("BC") as his counsel.  The Receiver and BC have performed substantial work administering the Receivership Estate, pursuing claims and assets of the estate,

and identifying investors in the Receivership Entities.  The Receiver and BC's efforts are summarized more fully below.

6. As the Receivership progressed, it became necessary for the Receiver to hire an accountant to assist with day-to-day accounting needs.  Accordingly, with the Court's approval, the Receiver hired Greg T. Murray, CPA ("Murray") as an accountant for the Receiver.  *See* Order Granting Unopposed Application to Employ Greg T. Murray as Accountant for Receiver [Dkt. No. 45].  Mr. Murray has spent over 400 hours on various tax matters, reconciling bank statements, assisting with forensic examination of records, reviewing and reconciling claims, and maintaining accounts and other accounting issues.  *See* Amended First Interim Application to Allow and Pay Professional Fees to Greg T. Murray, PLLC [Dkt. No. 138].

7. In addition, the Receiver hired an investment banker/broker, Barrier Advisors to assist with sales of Receivership assets and records.  *See* Order Granting Unopposed Application to Employ Barrier Advisors as Investment Banker for Reveicer [Dkt. No. 59].  Barrier spent several months performing due diligence on over 450 "Legacy Assets" and other assets of the Estate (together, the "Receivership Assets"), which are primarily promissory notes secured by liens on residential homes or fee interests in property obtain by deeds in lieu. [Dkt. Nos. 62, 63, and 104].  Barrier has marketed the Receivership Assets on several public exchanges, has received hundreds of inquiries and requests for further information, and is prepared to sell the Receivership Assets to the highest bidder.  *See* Motion for Authority Sell Properties to Lakeside Portfolio Management, LLC (the "Lakeside Sales Motion") [Dkt. No. 103] and (ii) Motion for Authority to Sell Property and to Approve Sales Procedures (the "Barrier Sales Motion") [Dkt. No. 104] (together, the "Sales Motions").

8. The Receiver's and Barrier's efforts to sell the Receivership Assets have been significantly hindered by the objections of some investors to the Sales Motions. *See* Dkt. Nos. 111, 112, 114. Based on the investors' objections, the Receiver delayed final sale of the Receivership Assets. As a result, the Sales Motions were denied, subject to reinstatement. *See* Order [Dkt. No. 181]. However, the Receiver has resolved most of the investors' objections to the Sales Motions (*see* JEG Settlement below) and anticipates refiling the Sales Motions.

9. Additionally, at the request of the investors, the Receiver retained Wingspan Portfolio Advisors, LLC ("Wingspan") to analyze the Receivership Assets to determine the best course of action including, but not limited to, whether it is in the best interest of the Estate to sell the assets immediately or service the assets for a period of time and then sell them. Wingspan has determined that based on its independent assessment, it is in the best interest of the Estate to immediately sell the Receivership Assets.

10. The Receiver has also engaged Jeffrey Goldfarb with Goldfarb, LLP as contingency fee counsel to analyze and evaluate certain potential causes of action belonging to the Receivership Estate. *See* Notice of Appearance of Additional Counsel [Dkt. No. 87]. Mr. Goldfarb has successfully settled a potential cause of action against the MCS Parties that resulted in a payment to the Estate of over $1.3 million (more fully described below). Additionally, Mr. Goldfarb has agreed to terms to settle the Estate's potential claims against American Mutual, LLC that will result in a payment of $50,000 to the Estate.

11. Furthermore, the Receiver has retained Logos Data Services ("Logos") to maintain and restore data from the Defendants' server. Logos is currently in the process of retrieving and restoring data regarding the servicing history of certain assets that has been requested by potential purchasers of the Receivership Assets.

12. The Receiver has also retained Simplex Energy Solutions, LLC ("Simplex") [Dkt. No. 174] to market and sell oil and gas leases that the Estate acquired in a settlement with the Boyce Parties (*see* Sec. (B)(iii) below). Simplex is marketing the oil and gas leases to exploration and production companies and leasehold acquisition funds in the Permian Basin and panhandle areas of Texas. Simplex has received 15 requests for further information, has four potential buyers performing due diligence, and is currently engaged in price negotiations with at least two potential purchasers. Simplex expects to make a request for best and final offers in mid-June so that a sale can be finalized by the end of June.

**B.    Identity, Location, And Value Of Receivership Assets And Liabilities Pertaining Thereto.**

13. As part of his duties, the Receiver is tasked with identifying, locating, and valuing Receivership Estate assets and executing on those assets for the benefit of the estate. The Receiver is in the process of identifying and locating assets owned by Defendants, as described more fully below.

**(i)    Interest in P38**

14. Through his investigation, the Receiver identified an entity known as P38 Holdings, LLC ("P38"), the original ownership of which was held 10% by Wingspan Portfolio Advisors, LLC; 45% by Charles A. Vose III ("Vose"); and 45% by TREI II Holdings, LLC ("TREI II"). The Receiver further identified TREI II as an entity directly or indirectly controlled by Defendants and, as such, a part of the Receivership Estate.

15. On or about August 17, 2011, TREI II agreed to transfer its 45% interest in P38 to Vose (the "P38 Transfer"). In consideration for the P38 Transfer, TREI II received from Vose a 5% interest in Stewardship Management, LP, which was held by another entity owned by Vose, Southwest Federation North Texas, LP.

16. The Receiver does not believe that the P38 Transfer was for reasonably equivalent value and, therefore, believes that the P38 Transfer is an asset of the Receivership Estate. The Receiver, thus, contacted Vose and reached a settlement whereby Vose agreed to assign his interest in the P38 Transfer to the Receiver; relinquish the 5% partnership interest in Stewardship Management, LP that was transferred to TREI II; and relinquish to the Receiver the $5,264.71 in distributions received from P38 [Dkt. No. 69].

17. The Receiver received $5,264.71 from Vose and has received periodic small distributions from the Estate's interest in P38. To date, these distributions have totaled $27,987.

### (ii) The Legacy Assets and the Substitute Assets

18. The Receiver has located more than 450 Legacy Assets and 130 Substitute Assets that are set to be auctioned for the benefit of the Estate. [Dkt. Nos. 62, 63, and 104]. The Legacy Assets consist of properties that were titled in the name of one of the Defendants at the time the Receiver was appointed. Upon appointment, the Receiver took possession of the Legacy Assets and turned them over to Barrier to be marketed and readied for sale.

19. The Substitute Assets were acquired through a settlement with Stewardship Fund No. 2, L.P., Stewardship Fund No. 3, L.P., Stewardship Fund No. 4, L.P. and Stewardship Fund No. 5, L.P (collectively, the "Mt. Vernon Entities"). The Receivership Estate owns a forty percent (40%) limited partnership interest in each of the Mt. Vernon Entities. The Mt. Vernon Entities acquired assets from one or more of the Defendants through a series of Asset Disposition Agreements that list certain mortgages that were to be purchased on behalf of the limited partnerships.[1] However, certain assets described in the Asset Disposition Agreements were not

---

[1] The Receivership Estate will receive distributions from the profits generated by the Mt. Vernon Entities from the sale of its remaining assets. However, because the Estate's interest is only as a limited partner, the Receiver has no control over the sale of such assets.

identified in the original limited partnership agreements (the "Substitute Assets"). As such, the Receiver contends that the Estate may have a claim to take title to the Substitute Assets by virtue of a fraudulent conveyance claim. The Mt. Vernon Entities disagree and assert that they are entitled to ownership. Based on the Receiver's potential claim to the Substitute Assets, the Mt. Vernon Entities entered into a settlement whereby the Estate will be granted a 40% profits interest in the Substitute Assets in exchange for the Mt. Vernon Entities' continued efforts to preserve the value of the Substitute Assets. *See* Order Granting Receiver's Emergency Motion to Approve Asset Disposition Agreement [Dkt. No. 63].

### (iii)    Settlement with the Boyce Parties

20.    Through his investigation, the Receiver learned that in 2011, Robert and Elizabeth Boyce and ER, LLC (collectively the "Boyce Parties") advanced $1.3 million to one or more of the Defendants. In return, the Boyce Parties received $250,000 in cash, oil and gas leases of undetermined value, and 71 properties (mostly REO). In December of 2011, the Boyce Parties sold 53 of the properties for net proceeds of approximately $650,000, leaving 18 properties in their possession (the Receiver believes that the properties have a value of approximately $50,000).

21.    The Receiver believes that the Estate may have claims against the Boyce Parties arising out of their transactions with the Defendants. Accordingly, the Receiver contacted the Boyce Parties and reached a settlement whereby the Boyce Parties agreed to transfer to the Receiver the 18 properties acquired from Defendants, transfer to the Receiver oil and gas leases and the associated overriding royalty interests, and pay the Receiver $50,000 [Dkt. Nos. 80 and 95]. The Receiver has received the deeds to the REO properties, a $25,000 payment, and the oil

and gas leases. The 18 properties are currently being marketed for sale by Barrier. As stated more fully above, Simplex Energy Solutions, LLC is currently marketing the oil and gas leases.

### (iv) Settlements with the Harbour and Cavco Entities

22. Through his investigation, the Receiver determined that in July 2008, Harbour Portfolio I, LLC ("Harbour I") and Harbour Portfolio II, LLC ("Harbour II") attempted to purchase from Defendants 221 and 172 distressed real estate mortgages and corresponding notes for $2,032,395.69 and $1,321,103.80 respectively. As part of the transaction, each of the mortgages should have been assigned to Harbour I and Harbour II (and the assignments recorded) and an allonge should have been executed for each note indicating that Harbour I and Harbour II were the new holders of the notes. Although the transactions closed in 2008, few, if any, of the mortgage assignments or allonges were ever executed or recorded. As a result, the Receiver claimed an interest in the remaining mortgages and notes owned by Harbour I and Harbour II.

23. Similarly, in February 2010, Harbour Portfolio IV ("Harbour IV") attempted to purchase 199 distressed real estate mortgages and corresponding notes for a purchase price of $645,000 and from March 2009 to June 2010, Cavco Holdings, LLC ("Cavco") attempted to purchase 203 distressed real estate mortgages and corresponding notes for a total purchase price of approximately $917,000. As with Harbour I and Harbour II, Harbour IV and Cavco failed to properly assign and transfer the mortgages and notes. As a result, the Receiver claimed an interest in the mortgages and notes owned by Harbour IV and Cavco.

24. Based on the Receiver's potential claims, Harbour I, Harbour II, Harbour IV, and Cavco entered into settlement agreements with the Receiver [Dkt. No. 79]. Under the settlement agreements, Harbour I agreed to transfer its interest in eighty (80) mortgages and notes to the

Receivership Estate; Harbour II agreed to transfer its interest in thirty seven (37) mortgages and notes to the Receivership Estate; Harbour IV and the Receiver will divide the net proceeds from sale of Harbour IV's assets 40% to the Receivership Estate and 60% to Harbour IV; and Cavco and the Receiver will divide the net proceeds from sale of Cavco's assets 40% to the Receivership Estate and 60% to Cavco.

25. Based on the Receiver's settlement with Cavco and Harbour IV, the Estate has received $13,632.42 from Harbour IV and $29,707.30 from Cavco. The Receiver anticipates receiving additional funds in smaller amounts.

26. The assets received from settlements with the Harbour and Cavco entities were marketed for sale through Halo Companies, Inc. ("Halo"). Halo identified a potential buyer (Lakeside Portfolio Management, LLC) for the assets and the Receiver filed a motion seeking authorization to sell the assets (the "Lakeside Sales Motion"). *See* Motion for Authority to Sell Properties to Lakeside Portfolio Management, LLC [Dkt. No. 103]. However, based on objections from investors, the sale of the assets was delayed and the Sales Motions denied. At this time, the Receiver has resolved most of the investors' objections to the Sales Motions and, as a result, intents to re-file the Sales Motions.

27. The Receiver has remained in contact with Lakeside Portfolio Management, LLC, which is still pursuing the sale, and has received additional offers to purchase the assets from Dyck O'Neal Inc. and a new potential bidder. Based on the new offers to purchase the assets, the Receiver anticipates re-filing the Lakeside Sales Motion to allow for a short bidding period in which any interested party may bid on the assets.

### (v) <u>Anglers and Hunters, Inc.</u>

28. Through his investigation, the Receiver determined that the Estate has an interest in Angler and Hunters, Inc., a now defunct entity owned or controlled by Temme. Although Anglers and Hunters, Inc. is no longer operating, the Receiver identified a bank account owned by Anglers and Hunters that contained $19,988.36. The Receiver has acquired the funds in the account and closed the account.

### (vi) <u>Other Assets of Defendants</u>

29. Through his investigation, the Receiver has also located a personal retirement account owned by Temme. The Receiver filed a motion to liquidate the account, which was granted by the Court [Docket No. 165].

30. The Receiver has recently become aware of real property in Bonham, Texas in which Temme has an ownership interest. The Receiver is in the process of evaluating whether it is in the Estate's interest to execute against and/or sell the property.

### (vii) <u>"Disposed" and "Sold" Assets</u>

31. The Receiver has located numerous boxes containing asset files for properties that were identified by the Defendants as "disposed" assets and numerous containing asset files for properties that were identified by the Defendants as "sold" assets. At this time, the Receiver is working with investors to cull, identify, and analyze the "disposed" and "sold" assets. As this process is ongoing, it is too early do determine if any value can be obtained.

### C. <u>Litigation Claims.</u>

32. The Receiver continues to investigate potential litigation claims. At this time, the Receiver is in active negotiations with an investor group that the Receiver anticipates will result in a large recovery for the Estate. The Receiver will continue to investigate other potential

claims and will utilize contingency counsel to pursue them if it is in the best interest of the Receivership Estate.

33. Based on this investigation, the Receiver discovered that, despite massive losses on other ventures, certain entities associated with MC Smith Realty, LLC—MCS Small Cap Fund I, LP, MCS Stewardship No. 2 Invest, LP, and MCS Stewardship No. 3 Invest, LP (collectively, the "MCS Parties")—realized "net profits" that apparently total about $3 million from their dealings with the Defendants. After extensive negotiations and the exchange of relevant documents, the Receiver determined that it was in the best interest of the Estate to enter into a Compromise & Settlement Agreement to resolve the claims against the MCS Parties. Under the Settlement, the MCS Parties made a payment of $1,335,000 to the Receiver for the benefit of the Estate.[2]

34. In addition, the Receiver is investigating potential causes of action against Home Solutions Partners, LP ("HSP"). HSP paid $1.5 million to certain Defendants to purchase an asset package. The assets were never delivered to HSP. Subsequently, HSP was paid $1.8 million from certain other Defendants. The Receiver is examining potential causes of action against HSP based on its receipt of a $1.8 million payment from the Defendants.

D. **Estate Cash Flow.**

35. As of May 17, 2013, the balance of the Receiver's liquid accounts totaled $1,085,551. This does not include other, non-liquid assets of the Receivership Estate such as interests in notes, properties, or potential causes of action.

---

[2] In conjunction with the Settlement, Receiver paid settlement proceeds to cover professional fees and expenses to the law firm of Goldfarb LLP pursuant to the retention agreement with the Receiver in the total amount of $333,750.00 in attorney's fees (or 25% of the $1,335,000.00 settlement payment) plus $210 in expenses.

Receiver's Status Report 11

### E. **Identity of Investors and Creditors.**

36. The Receiver is working to identify and compile a database of all investors and creditors of the Defendants. The Receiver's task of identifying investors, however, is made difficult because the Defendants have no known comprehensive list of investors. The Receiver is working with Murray to identify investors based on funds received by Defendants. At this time approximately 143 Investor Proofs of Claim have been provided to the Receiver in a total amount in excess of $12,000,000.

### F. **Evidence Preservation**

37. Upon his appointment, the Receiver took control of the premises, property and documents at the Defendants' corporate offices at 2500 Dallas Parkway, Suite 230 Plano, TX 75093 (the "***Premises***"). The Receiver and his team immediately took possession of the Premises and changed the locks with the aid of the landlord.

38. The Receiver removed all relevant paper documents from the Premises and secured pertinent hard drives, computers, and servers at the offices of Bryan Cave LLP. The Receiver has and will make the Defendants' records and information and its computer system available to the Commission.

### G. **Obtaining Additional Evidence**

39. The Commission has made available certain documents that it obtained through its investigation of Defendants.

40. Further, the Receiver is working with the FBI to copy or obtain certain other documents that it obtained through its investigation of Defendants. As part of his ongoing investigation, the Receiver has reviewed records seized by the FBI.

### H. Investor Relations

41. The Receiver and his team have fielded daily telephone calls and e-mails from investors, homeowners, and creditors of Defendants and have personally spoken with dozens of investors, homeowners, and creditors.

42. The Receiver established a website at //www.stewardshipfundreceivership.com in order to provide information to and obtain information from investors of the Defendants.

43. In addition to the foregoing, the Receiver and his counsel are engaged in other investigation and recovery efforts on which it would be premature to report or where public disclosure of the efforts would potentially adversely impact the prospects of success.

44. The Receiver has corresponded with hundreds of taxing and regulatory authorities that have provided notice of various efforts to impact the underlying collateral and in some instances property owned by the receivership estates. The result of this correspondence in many cases has been to eliminate enforcement efforts. It is anticipated that this will result in value to the receivership estate.

45. Most recently, the Receiver has had numerous meetings with the investors and their counsel. Such meetings have been followed by significant work to answer questions and provide additional information.

### I. Operations

46. The Defendants are no longer operating.

### J. Asset Sales

47. As stated more fully above, the Receiver is working with Barrier and other parties to consummate sales of all assets recovered by the Receiver.

## III.

## Conclusion And Recommendations

48.     The Receiver recommends that the receivership continue because the Defendants do not have an ongoing business, employees, or infrastructure to liquidate the assets and wind-up their affairs.  At this time, the Receiver does not believe it is in the best interest of the investors and creditors of Defendants for the Defendants to declare bankruptcy.

49.     Currently, assets are being identified that will bring funds into the estate for the payment of investors and creditors.

50.     All information stated above is based on the knowledge of the Receiver at this point in time and later developments and discoveries may cause the information reported herein to be outdated or incorrect.


Dated: May 28, 2013                            Respectfully Submitted:


                                               //s// Keith Miles Aurzada
                                               Keith Miles Aurzada, Receiver

                                               2200 Ross Avenue, Suite 3300
                                               Dallas, Texas  75201
                                               Telephone:  214.721.8041
                                               Facsimile:  214.721.8100

## **CERTIFICATE OF SERVICE**

I certify that on 28, 2013, a true and correct copy of the foregoing pleading was served *via* the Court's CM/ECF system to all parties consenting to service through the same, including to the following:

David Reece
United States Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102

John Helms, Jr.
Helms, Roberts & Diaz LLP
6060 N. Central Expressway, Suite 560
Dallas, Texas 75206

COUNSEL FOR JAMES G. TEMME

Moreover, the foregoing will be uploaded to www.stewardshipfundreceivership.com

//s// Keith Miles Aurzada
Keith Miles Aurzada, Receiver