**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **SECURITES AND EXCHANGE COMMISSION,** <br><br> **Plaintiff,** <br><br> v. <br><br> **JAMES G. TEMME,** <br> **STEWARDSHIP FUNDS, LP** <br> **Defendants.** | Civil Action No. 4:11cv655 |

**DEFENDANT'S RESPONSE TO THE SEC'S MOTION FOR SUMMARY JUDGMENT**

Defendant James G. Temme ("Mr. Temme"), files this response to Plaintiff's Motion For Summary Judgment (the "MSJ"). As set forth herein, the Court should deny the motion in its entirety.

**I.**

**THE COURT SHOULD DENY SUMMARY
JUDGMENT ON THE ANTI-FRAUD PROVISIONS**

**A.    Requirement For Summary Judgment Of A Violation Of The Anti-Fraud Provisions.**

As Plaintiff correctly states, in order to demonstrate entitlement to summary judgment, Plaintiff must demonstrate that it is entitled to judgment as a matter of law as to each of the following:

(a) Use of the mails or an instrumentality of interstate commerce;

(b) A false or misleading statement or omission of material fact;

(c) In connection with the offer, purchase or sale of securities; and

(d) The required intent or *scienter*.

*See Aaron v. SEC*, 446 U.S. 680, 697 (1980).

Normally, one would expect that a party seeking summary judgment would identify each alleged false statement or omission and explain how each one meets each required element. Plaintiff has not done so. Instead, Plaintiff has submitted a narrative that obscures the alleged misrepresentations, requires the court or a responding party to try to pick them out, and does not explain how each allegedly meets the required elements. In responding to Plaintiff's motion, defendant has attempted to identify the alleged misrepresentations and to respond to them accordingly.

Plaintiff is not entitled to summary judgment. Plaintiff has failed to demonstrate with its own proof that it is entitled to judgment as a matter of law, and fact issues prevent summary judgment.

B.  **The Court Should Deny Summary Judgment Because The SEC's Evidence Does Not Establish Entitlement To Summary Judgment, And Fact Issues Preclude Summary Judgment.**

**1. Stewardship Fund 2.**

Regarding Stewardship Fund 2 ("SF 2"), the Plaintiff claims that Mr. Temme told Canadian Peso investors that he would acquire ½ of a package of assets called $1^{st}0082$ and all of a package called $1^{st}0083$, that he would resell package 1st 0083 within 2 weeks for a 20% profit. Plaintiff claims that Mr. Temme actually bought all of 1st 0082 for this investor group, bought none of package 1st 0083 for them, and instead, sold package $1^{st}0083$ to another investor group, allegedly without conveying any part of the proceeds to the Canadian Peso group. *See* MSJ at 4 (first bullet point).

Plaintiff does not identify the allegedly false statement, but it appears to be that the investors did not receive any interest or profit from package $1^{st}0083$. As an initial matter,

Plaintiff does not allege, and offers no proof, that the investors did not receive an appropriate return on their investment. Thus, Plaintiff has not shown that any alleged misrepresentation was material. But more fundamentally, as its own documents show, Plaintiff misunderstands and misrepresents the investment.

Nowhere does Plaintiff's evidence show that SF 2 was supposed to receive *all* of package 1st0083. Plaintiff simply assumes this, incorrectly, because one of its cited emails indicates that the assets would come out of a group that the seller called 1st0083. *See* Pl. MSJ App. 00044. In fact, though, another email filed by Plaintiff shows that the only part of 1st0083 that SF 2 was to receive were the "flip package" portion of 1st0083. *See* Pl. MSJ App. 00025. That same email shows that the "flip package" was purchased on behalf of SF 2, sold for a profit, and the investors got back their capital plus a return on their investment. *See id.* In fact, the email identifies for the investors how much they paid for the "flip package," the amount for which it was sold, and their return on investment. *See id.* Additionally, given that the "flip package" portion of 1st0083 was bought for the amount that the investors wired and sold at a profit, the idea that the investors' money was supposed to purchased *twice* the assets that they actually purchased is nonsensical and disproves Plaintiff's assertion that SF 2 was supposed to buy *all* of package 1st0083. Moreover, in the same email chain, one of the investor spokespersons responded to Mr. Temme, "Great job on selling the portfolio." Thus, there was no materially false statement, or at least a fact issue exists.

Additionally, no admissible evidence supports Plaintiff's assertion that Mr. Temme "did not convey that package or the subsequent re-sell to the limited partnership." MSJ at 4. First, as noted above, Plaintiff's own evidence shows the opposite. Second, the evidence Plaintiff cites simply does not support the proposition. Plaintiff cites paragraphs 17-22 of the Aurzada

Declaration, but nothing in these paragraphs supports the proposition or even remotely suggests that the investors did not get the proper return on their investment. *See* MSJ at 4 (citing Aurzada Decl. ¶¶ 17-22); Pl. MSJ App. At 00014-15 (Aurzada Decl. ¶¶ 17-22). Third, even if the Aurzada Declaration did support the proposition, which it does not, all of paragraphs 17-19 of the Aurzada Declaration, which are the only narrative sections, are inadmissible. *See* Defendant's Motion to Strike Declaration of Keith Miles Aurzada.

   2. **Stewardship Fund 3.**

As to Stewardship Fund 3 ("SF 3"), Plaintiff claims that Mr. Temme represented that he would purchase a pool of 171 assets and that he purchased a portion of package $1^{st}0083$ and sent the investors' funds to an account held by Destiny Fund. *See* MSJ at 4 (second bullet point). The alleged false statement appears to be that Mr. Temme purchased a portion of package $1^{st}0083$ instead of the 171 assets.

As an initial matter, Plaintiff cites no evidence to show that the assets actually acquired were not the same, or nearly the same, as the 171 assets, or that the assets acquired had a materially different value than the 171 assets. Nor does Plaintiff even claim that the investors did not get a proper return on their investment. Thus, Plaintiff has not shown materiality.

But again, more fundamentally, Plaintiff appears to misunderstand the facts. Plaintiff bases the assertion that the assets acquired for SF 3 are different from the 171 assets on the fact that the assets purchased are from package $1^{st}0083$, which Plaintiff mistakenly believed to have been committed to SF 2. In fact, as explained above, only the "flip package" portion of $1^{st}0083$ was for SF 3.

Another different group of assets out of $1^{st}0083$, which were to be worked rather than flipped, was meant for SF 3. As Stewardship Fund's asset list shows, as of July 2011—two and

a half years after the purchase for SF 3—there were 115 assets remaining in SF 3 that had been purchased from GMAC 1st0083. *See* Ex. 1 (Henry Decl., Ex. A) (*see* instructions for viewing Ex. A in footnote).[1] This number is consistent with having worked and sold assets from a package of 171 assets over a two and a half year period. Thus, the assets were there, and Plaintiff cannot show that any representation regarding it was materially false.

Plaintiff appears to believe that the package was not purchased because the investors' money was wired to the account of an entity called Destiny Fund rather than to buy the assets. Plaintiff overlooks the fact that the assets for this package were pre-purchased—that is, they were acquired before the investors sent in their money—a fact of which Plaintiff is fully aware. As Plaintiff acknowledges, the assets were purchased by Stewardship on December 19, 2008. *See* Pl. MSJ App. 00015 (Aurzada Decl. ¶ 25). The investors did not send in their money for these assets until February 17, 2009. *See* Pl. MSJ App. 00202 (wire transfer record). Because the assets had already been acquired by Stewardship ***before*** the investors sent in their money, Stewardship did not need to acquire the assets because it already had them. Instead, as Plaintiff's own evidence shows, the money was sent to Stewardship to reimburse it for the purchase. Stewardship used arrangements like this when investor funds were not ready at the time of the closing on the asset package. Ex. 4 (Phillips Decl. ¶ 3).

In any event, as set forth above, the evidence shows that these assets were, in fact, placed in SF 3. Indeed, the July 2011 Stewardship asset spreadsheet, attached as Exhibit A to the Declaration of John Henry, shows that the GMAC package 1st0083 assets in SF 3 were acquired in December 2008. *See* Ex. 1 (Henry Decl., Ex. A) (identifying the GMAC package in SF 3 as

---

[1] Exhibit A to the Henry Declaration is an XL spreadsheet. It has been sent to the Court separately because it cannot be electronically filed in XL format. To identify the SF 3 properties from the GMAC 1st0083 package, first go to Column D ("Properties: Investor ID"). Use the dropdown menu to select only "Stewardship Fund No. 3, LP." Then, in Column E ("Properties: Package ID"), use the dropdown menu to select only "GMAC Dec08 1st0083"). This shows the 115 properties from this package that remained as of July 2011.

"GMAC Dec08 1st0083") (see FN 1 for instructions on how to identify this package). Moreover, Plaintiff does not claim that the investors in SF 3 did not receive a reasonable return on their investment. Plaintiff can show no materially false statement.

### 3. Stewardship Fund 4.

As to Stewardship Fund 4 ("SF 4"), Plaintiff claims that Mr. Temme represented he would acquire a tape of assets "from Home Shield" for $500,000 and that he did not provide clear title and either double pledged the assets or misappropriated them. *See* MSJ at 4-5 (third bullet point on page 4). Here, Plaintiff again fails to understand the transaction and misstates its own evidence.

Plaintiff's claim is based on the allegation that Mr. Temme was to acquire a tape of assets "from a company called Home Shield." MSJ at 4 (third bullet point). For the proposition that Mr. Temme double pledged or misappropriated assets, Plaintiff relies entirely on the Receiver's declaration, which states that "there is no evidence of a transfer of funds to Home Shield" and that "there is no record of a sales contract with Home Shield or any communications with Home Shield." Pl. MSJ App. 00016 (Aurzada Decl. ¶ 29).

As an initial matter, Plaintiff's evidence concerning the alleged representation that the assets would be acquired "from…Home Shield" is inadmissible. Plaintiff cites no documents that say this. The only evidence Plaintiff cites is the Receiver's unsupported assertion that Mr. Temme made this representation. *See* Pl. MSJ App. 00016 (Aurzada Decl. ¶ 29). This assertion by the Receiver, however, is inadmissible because he lacks personal knowledge of any such alleged representation, and any knowledge he allegedly has would be based on hearsay or other information not shown to be admissible. *See* Defendant's Objections to the Declaration of Keith

Miles Aurzada and Motion to Strike (table with objections to Aurzada Declaration, paragraph 29).

In any event, the lack of evidence regarding Home Shield is not surprising, because even if Home Shield *owned* the assets, funds would typically not be sent to Home Shield. Instead, they would be sent to a servicing company that acted as the *seller* and handled the transaction on behalf of the *owner*. *See* Ex. 4 (Willingham Decl. ¶4). Plaintiff's own document demonstrates that the investors knew that GMAC was the seller. *See* Pl. MSJ App. 00276 (email from Dave Mumert to Jerry Wheeler repeatedly referring to GMAC as the seller).

Additionally, Plaintiff's assertion in its summary judgment motion that Mr. Temme did not provide clear title and either double pledged the assets or misappropriated them is not supported by Plaintiff's own evidence. Plaintiff cites the Receiver's Declaration, paragraphs 29-31, but these paragraphs do not support the proposition. *See* Pl. MSJ App. 00016 (Aurzada Decl. ¶¶ 29-31). Moreover, even if Plaintiff had submitted evidence supporting the allegation regarding alleged lack of clear title, which Plaintiff did not, this would be at best a breach of contract issue and could not support a claim for a materially false representation with *scienter*.

Plaintiff has not proven a materially false representation.

### 4. Stewardship Fund 4 Part Two.

Next, as to Stewardship Fund 4 ("SF 4"), Plaintiff claims that, in December 2009, Mr. Temme represented that he would acquire a package of assets for $1,307,948, but that he had already sold them. Because Mr. Temme had previously sold them, Plaintiff apparently assumes that Mr. Temme must have either double pledged the assets or misappropriated them. *See* MSJ at 5 (fourth bullet point).

Plaintiff's assumption is incorrect. As Plaintiff acknowledges, the assets were originally sold in October 2008. *See* Plaintiff's MSJ at 5 (fourth bullet point). The sale to SF 4 was over a year later. Plaintiff cites no evidence that the assets were not transferred from the original buyers, MCS and Harbour and subsequently acquired by SF 4. Moreover, as of July 2011, the Stewardship asset spreadsheet

included 131 assets, including 69 with the designation "MC," indicating an acquisition from MCS. *See* Ex. 1 (Henry Decl., Ex. A) (*see* instructions for viewing Ex. A in footnote).[2] Plaintiff therefore has not demonstrated entitlement to summary judgment. At least a fact issue exists concerning whether any alleged representation was false, whether there was a material difference between what was represented and what was received, and whether there was *scienter*.

### 5. Stewardship Fund 5.

Regarding Stewardship Fund 5, Plaintiff alleges investors wired funds to Madison Settlement Services for the purchase of an asset package and that the funds were subsequently wired to the accounts of Stewardship entities. Based on this, Plaintiff claims that it is "undisputed" that no assets were purchased. *See* MSJ at 5 (fifth bullet point).

Again, Plaintiff's assumptions are incorrect. As noted above, Stewardship Fund would sometimes pre-fund asset packages by acquiring them before the investors' funds were available. *See* Ex. 4 (Phillips Decl. ¶ 3). In those situations, the investors' money would be wired to an escrow account such as the one maintained at Madison Settlement Services. *See id.* Thus, the fact that funds were wired from Madison Settlement Services to other Stewardship accounts does not mean the assets were not already purchased.

The summary judgment evidence—Stewardship Fund's July 2011 asset list--also shows that the package was acquired for SF 5. *See* Ex. 1 (Henry Decl., Ex. A) (*see* instructions for viewing Ex. A in footnote).[3]

---

[2] Exhibit A to the Henry Declaration is an XL spreadsheet. It has been sent to the Court separately because it cannot be electronically filed in XL format. To identify the SF 4 properties, first go to Column D ("Properties: Investor ID"). Use the dropdown menu to select only "Stewardship Fund No. 4, LP."
[3] Exhibit A to the Henry Declaration is an XL spreadsheet. It has been sent to the Court separately because it cannot be electronically filed in XL format. To identify the SF 5 properties, first go to Column D ("Properties:

Plaintiff has not demonstrated any material false statement regarding SF 5.

6. **Stewardship Fund 6.**

Regarding Stewardship Fund 6 ("SF 6"), Plaintiff claims that Mr. Temme solicited money for an asset package that, allegedly, he claimed he could sell at a profit within 90 days. Plaintiff claims that the assets were actually purchased by an entity called Harbour Portfolio V ("Harbour V"), and that this means that the investors did not get the benefit of the assets. Plaintiff is incorrect.

As an initial matter, there is no admissible evidence of any alleged representation on which any investor relied concerning selling at a profit within 90 days or the like. Indeed, Plaintiff's own evidence includes an email in which the investors set forth their understanding of the deal, and it did not include any such terms. *See* Pl. MSJ App. 000431.

The fact that the assets were acquired by Harbour V does not mean, as Plaintiff simply assumes, that SF 6 did not get the benefit of the assets. The reason the assets were acquired by Harbor V was because of the circumstances of the transaction. The deal was initially envisioned as a "non-traditional" short-term flip. Pl. MSJ App. 00432. But SF 6 had not been formed at the time the transaction became available. *See* Pl. MSJ App. 000431. On the other hand, Harbour V already had a purchase and sale contract with the seller that covered the assets, and the individual who controlled Harbour V had the relationship with the seller. *See* Ex. 4 (Willingham Decl. ¶ 3). That individual had worked closely with Stewardship on a number of successful transactions prior to this one. *See id.* Thus, it made sense to put the assets in Harbour V.

---

Investor ID"). Use the dropdown menu to select only "Stewardship Fund No. 5, LP." This shows the SF 5 properties as of July 2011.

Plaintiff submits no evidence that SF 6 did not receive the benefits of the assets even though they were acquired by Harbour V. In fact, the declaration on which Plaintiff relies claims that Harbour V "received the benefits of the payment from the SF 6 investors," but it does ***not*** claim that the SF 6 investors did not ultimately receive the benefits of the assets. *See* Pl. MSJ App. 00019 (Aurzada Decl. at 11, ¶ 44).[4]

### 7. Stewardship Fund 6 Part Two.

Next, as to SF 6, Plaintiff claims that, in December 2010, Mr. Temme sought and obtained $2.347 million to buy a package of assets from Home Shield, and he used the proceeds to fund a litigation settlement with a group of entities called MCS. Plaintiff therefore assumes that SF 6 did not get any assets. MSJ at 6. Plaintiff again misunderstands the transaction.

Plaintiff is correct that the $2.347 million was used for the settlement with MCS. What Plaintiff fails to understand is that the $2.347 million was used to buy the assets for SF 6 ***from*** MCS. The parties in the MCS settlement signed a Supplemental Settlement Agreement on December 10, 2010. *See* Ex. 2 (Schwartz Declaration, Ex. A). Part of the purpose of that Supplemental Settlement Agreement was to allow Stewardship Fund and Mr. Temme to sell MCS's invested assets to fund the settlement. *See* Ex. 2 (Schwartz Decl. ¶ 4). The parties to the MCS settlement made Madison Settlement Services responsible for the sale of the assets. *See* Ex. 2 (Schwartz Decl., Ex. A). That is why the SF 6 investors wired their funds to Madison Settlement Services, which then transferred the funds to the account for the MCS settlement. *See* Pl. MSJ App. 000441 (12/23/10 transfer from investors to Madison); 00445 (12/27/10 transfer from Madison to Texas Capital Escrow).

---

[4] Additionally, this statement in the Aurzada Declaration is inadmissible. *See* Defendant's Objections to the Declaration of Keith Miles Aurzada and Motion to Strike (table setting forth objections to ¶ 44).

Plaintiff's incorrect assertion that SF 6 did not receive the assets is based on its incorrect assumption that the *seller* was Home Shield. Specifically, Plaintiff relies on the following statement in the Receiver's declaration for proof that SF 6 did not receive the assets: "To date, I have not found any communications or other documents evidencing this purchase from Home Shield." Pl. MSJ App. 00019 (Aurzada Decl. ¶ 47). That statement and the assertion in the declaration's same paragraph that the investors were wiring funds to purchase assets "from Home Shield" are inadmissible because the Receiver lacks personal knowledge to make the statements and because they are based on hearsay or other evidence not shown to be admissible. *See* Defendant's Objections to the Declaration of Keith Miles Aurzada and Motion to Strike (section of objections table concerning paragraph 47). Thus, there is no admissible evidence to support Plaintiff's assertion that the package was to be acquired from Home Shield. Moreover, the fact that the purchase was from MCS, as a means to fund part of the MCS settlement, explains why the Receiver did not see the assets being acquired from Home Shield.

Plaintiff submits no admissible evidence that SF 6 did not receive the assets or that the assets received were materially different from those allegedly promised. Plaintiff has not proven a false statement of material fact with *scienter*.

    **8. Equitas Housing Fund III, LP**.

Plaintiff's allegations regarding Equitas Housing Fund III, LP ("Equitas") are at pages 6-11 of its summary judgment Motion. Plaintiff's allegations boil down to this: Plaintiff claims that, "[i]n truth, neither Temme, Stewardship Fund, nor any entity he controlled owned or made [any] real effort to procure the assets he purported to sell to the Equitas Investors in exchange for their capital contributions in the Equitas limited partnership." MSJ at 9. To support this assertion, Plaintiff claims that the seller of the assets, Home Solutions Partners, did not authorize

the sale of the assets to Equitas and that Chad Vose's name was allegedly forged on the purchase agreement.

The summary judgment evidence shows otherwise. The Stewardship asset list as of July 2011 shows 349 assets in Equitas Housing Fund III, LP, representing the purchase for the investors, Finch and Barry. *See* Ex. 1 (Henry Decl., Ex. A) (*see* instructions for [5] viewing Ex. A in footnote). Notably, this asset list spreadsheet contains detailed boarding tape information indicating that the owner—in this case, Home Solutions Partners—has, in fact, approved the sale. Specifically, the Equitas Housing Fund III, LP assets include the following information: last valuation amount (Col. K), last valuation date (Col. L), second mortgage amount (Col. N), borrower names (Cols. O, P), first payment due (Col. R), last payment (Col. T), next payment due (Col. W), mortgage origination date (Col. Y), monthly payment (Col. Z), and suspense fund (Col. AB). *See id.* The fact that Stewardship had this information demonstrates that Home Solutions Partners did, in fact, consent to the sale and purchase by Equitas, because owners rarely, if ever, permit the release of this information prior to closing. *See* Ex. 4 (Willingham Decl. ¶ 5). Therefore, at least a fact issue exists concerning whether Mr. Temme made any allegedly false statement of material fact with *scienter*.

### 9. Stewardship Philanthropy Fund No. 4.

Regarding Stewardship Philanthropy Fund No. 4 ("SPF 4"), Plaintiff claims that Mr. Temme was supposed to acquire a group of specific assets but that he did not acquire them. *See* MSJ at 15-18. Plaintiff's evidence does not support the proposition that the assets were not acquired.

---

[5] Exhibit A to the Henry Declaration is an XL spreadsheet. It has been sent to the Court separately because it cannot be electronically filed in XL format. To identify the Equitas Housing Fund III, LP properties, go to Column D ("Properties: Investor ID"), and, using the drop-down menu, select only "Equitas Housing Fund III, LP."

In order to try to show that the assets were not acquired, Plaintiff assumes that they must not have been acquired because the investors' funds were transferred to a Stewardship-related account, and $400,000 of the total was sent to the Equitas Investors. Plaintiff cites no evidence that the assets were not acquired. Instead, Plaintiff relies solely on the following assertion in the Receiver's declaration: "My investigation has not revealed any documents or communications that the investors in SPF4 authorized payments to, or entered into purchase agreements with, the Finch and Barry Group. Likewise, I have found no evidence of any attempt by Mr. Temme to acquire or transfer assets to the Finch and Barry Group." Pl. MSJ App. 00022 (Aurzada Decl. ¶ 60).

The fact that there was not a purchase agreement between Finch and Barry and SPF 4, or attempts to acquire or transfer assets to the Finch and Barry Group is not summary judgment evidence that the assets were not acquired. As explained above, Stewardship would often pre-fund asset packages, meaning that it would acquire the assets *before* the investors' funds were ready. *See* Ex. 4 (Phillips Decl. ¶ 3). In this situation, when the investors' funds came in, they would be used to reimburse the Stewardship entity that had acquired the package. *See id.* Thus, the fact that funds were subsequently sent to Finch and Barry does not mean that the assets were being acquired from Finch and Barry. They would not have been because they would already have been purchased before the investors' funds came in. Plaintiff has therefore failed to demonstrate entitlement to summary judgment.

## II.
## THE COURT SHOULD DENY SUMMARY JUDGMENT ON DISGORGEMENT

The Court should deny summary judgment as to disgorgement for several reasons. First, the Court should deny disgorgement because the Court should deny summary judgment as to any alleged violations. Second, Plaintiff's summary judgment on profits simply does not exist. Disgorgement is based on "profits causally connected to the violation." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2nd Cir. 1996). Plaintiff has submitted no evidence whatsoever on alleged profits to Mr. Temme, or anyone else. Plaintiff's motion asserts, without citing any evidence, that "Temme and Stewardship Fund fraudulently obtained at least $25 million from investors." MSJ at 27. Even if the evidence supported this statement, it concerns total investments by investors. It does not concern *profits* to Mr. Temme.

In order to calculate a disgorgement amount for summary judgment purposes, the Court would first have to enter summary judgment as to one or more specific misrepresentations. Then, the Court would have to calculate the profit(s) to Mr. Temme for those specific violations. There is no evidence at all from which to do this. The Court should therefore deny summary judgment as to disgorgement.

### III.

### THE COURT SHOULD DENY EQUITABLE RELIEF

The Court should deny equitable relief because the Court should deny summary judgment as to each of the alleged false statements.

### IV.

### THE COURT SHOULD DENY THE REQUEST FOR A CIVIL MONEY PENALTY

Plaintiff's request for summary judgment that it is entitled to a third tier civil penalty should be denied because Plaintiff has not presented evidence showing it is entitled to that

remedy. Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), allow for a third tier penalty only if the SEC is entitled to a judgment that (A) Mr. Temme committed the alleged violations, (B) the alleged violations involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (C) the alleged violations directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. For the reasons set forth above, Plaintiff is not entitled to summary judgment on its alleged misrepresentations. Accordingly, the Court should deny summary judgment as to any penalty.

Even if the Court were to find that a third tier penalty is appropriate in this case, the amount of that penalty should not be decided at this time. First, Plaintiff has not requested entry of any specific amount of penalty. Second, Plaintiff has not presented any argument or evidence concerning an amount of penalty. Third, Plaintiff has not addressed any of the factors courts consider concerning the amount of penalty to be assessed. When determining an amount of penalty, courts consider a number of factors such as: (1) the egregiousness of the violations at issue; (2) the defendant's degree of scienter; (3) the repeated nature of the violations; (4) the defendant's failure to admit wrongdoing; (5) whether the violations created substantial losses or the risk thereof; (6) the defendant's lack of cooperation or honesty with authorities; and (7) whether the penalty should be reduced because of the defendant's demonstrated current and future financial condition. *SEC v. Snyder*, 2006 U.S. Dist. LEXIS 81830, *34 (S.D. Tex. Aug. 22, 2006). Indeed, those factors can lead a court to find that no penalty is appropriate in some circumstances. *Id*. Because the Plaintiff has presented no argument nor evidence concerning an amount of penalty, none should be assessed in regard to the SEC's motion.

## V.

## CONCLUSION

Mr. Temme respectfully requests that the Court deny the Motion for Summary Judgment.

          Respectfully submitted:

          /s/ John Helms, Jr.
          John Helms, Jr.
          Texas Bar No. 09401001
          jhelms@fhsulaw.com
          Ritch Roberts III
          Texas Bar No. 24041794
          rroberts@fhsulaw.com
          **Fitzpatrick, Hagood, Smith & Uhl LLP**
          Chateau Plaza, Suite 1400
          2515 McKinney Ave.
          Dallas, Texas 75201
          Tel: (214) 237-0900
          Fax: (214) 237-0901
          COUNSEL FOR JAMES G. TEMME

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on counsel of record via the Court's CM/ECF system.

          /s/ John Helms, Jr.
          John Helms, Jr.