| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:11-cv-655 |
| | § | |
| | § | |
| JAMES G. TEMME, and | § | |
| STEWARDSHIP FUND, LP, | § | |
| Defendants. | § | |

## RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEYS' FEES AND EXPENSES (FROM JANUARY 1, 2013 TO MAY 31, 2013)

Keith M. Aurzada as Receiver (the "*Receiver*") for James G. Temme, Stewardship Fund, LP, and all other entities directly or indirectly controlled by James G. Temme or Stewardship Fund, LP, including but not limited to, Stewardship Advisors, LLC, d/b/a Stewardship Advisors, LP, Stewardship Asset Management Genpar I, LLC, Stewardship Group, LLC, Destiny Fund, LP and Stewardship Management, LP (collectively, the "*Defendants*"), hereby files his Third Interim Application to Allow and Pay Receiver's Fees and Expenses and; (2) Attorneys' Fees and Expenses and, in support of such, would respectfully show unto the Court as follows:

## BACKGROUND

1.      Prior to the initiation of the above-captioned action by the Securities and Exchange Commission ("*Commission*"), Defendants raised at least $35,000,000 from various investors seeking to purchase distressed residential mortgage loans and REO properties. In offering and selling the loans and properties, the Defendants represented to investors that the

offerings and proceeds would be used to buy properties/mortgages at deeply discounted values, and that the properties/mortgages would be improved to be leased or resold at a profit.

2.      As the Receiver has conducted his investigation, it has become apparent that the Defendants' means of acquiring properties was to obtain funds from various groups or individuals to invest in limited partnerships in which the general partner would acquire, at a discount, tapes of distressed, non-performing mortgage loans.

3.      In the spring of 2011, Defendants' scheme collapsed, payments to investors ceased, and lienholders began foreclosure proceedings on the properties acquired and held by the Defendants. Many of the properties are in dilapidated conditions. Moreover, it is difficult to tell from the Defendants' records how the properties were acquired, the consideration paid for each of the properties, and the complete transactional history with respect to each property. Moreover, many of the properties were, and remain, delinquent on ad valorem taxes and have been lost to foreclosure.

4.      Since commencing his duties, the Receiver has identified through the loan servicing company database and public record searches most of the lienholders on each of the properties. The receivership is still in the discovery phase, with a large focus of the Receiver being to identify, locate, and secure assets.

5.      During the period of time for which fees are requested in this Application, the Receivership Estate's cash balance has remained at or near $997,038. Additionally, as described below, the Receiver expects to liquidate additional assets of the Receivership Estate in the near future.

# APPLICATION FOR FEES AND EXPENSES
# OF THE RECEIVER AND HIS ATTORNEYS

6.      This Application seeks the approval and payment of fees and reimbursable expenses for the Receiver and Bryan Cave LLP ("**BC**") for the time period from January 1, 2013 through May 31, 2013.

7.      During the period covered by this Application, the Receiver has incurred fees and expenses with respect to his activities and those of BC as to these proceedings on a monthly basis as follows:

| Month | Fees | Expenses |
|---|---|---|
| January 2013 | $30,421.00 | $425.08 |
| February 2013 | $25,814.00 | $629.70 |
| March 2013 | $29,306.00 | $918.58 |
| April 2013 | $41,460.00 | $1,722.67 |
| May 2013 | $57,493.50 | $1,185.79 |
| **TOTAL:** | $187,389.50 | $4,881.82 |

8.      <u>Exhibit A</u>, which is attached and incorporated for all purposes, conveys the following information for the time period of January 1, 2013 through May 31, 2013: (a) the number of hours worked by each attorney and staff member on a particular day; (b) the manner and type of work performed by each attorney and staff member; (c) the customary billing rate for each person rendering service in this matter; (d) the monetary value assigned to each task

RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEY'S FEES AND EXPENSES

PGDOCS\6301788.1\C071707\0330022

performed by a given attorney and/or staff member; and (e) each expense item incurred. Each of the invoices attached as Exhibit A reflect aggregate expenses by category during a given month. A summary of the time billed by each task code is also included at the end of the invoices.

## DESCRIPTION OF RECEIVERSHIP ASSETS

9.      As of today, the balance of the Receiver's liquid accounts totals $997,038. This does not include other, non-liquid assets of the Receivership Estate, such as interests in notes, properties, or potential causes of action.

10.      At this time, the Receiver seeks approval of all fees and expenses requested herein, on an interim basis with final approval to be determined at the close of the Receivership. However, the Receiver only seeks reimbursement of 80% of his fees and 100% of his expenses;

## JOHNSON FACTORS

11.      In support of this request for compensation and reimbursement of expenses, the Receiver respectfully directs this Court's attention to those factors generally considered by courts in awarding compensation to professionals for services performed in connection with the administration of a receivership estate. As stated by the Fifth Circuit Court of Appeals in *Migis v. Pearle Vision. Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998), "The calculation of attorneys fees involves a well-established process. First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. In making a lodestar adjustment the court should look at twelve factors, known as the Johnson factors, after *Johnson*

*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." Those factors, as applied to the services rendered in this case by the Receiver and BC, are addressed below.

(a) **The Time and Labor Required**. The Receiver and BC respectfully refer to Exhibit A, which details the involvement of the Receiver and BC's attorneys in this case during the period covered by this Application showing that a total of more than 748 hours of attorney, Receiver, and paraprofessional time have been expended. The Receiver has endeavored to keep costs and fees down by, when possible, using secretarial assistance by employees who do not bill for their time, and by using paralegal staff who bill at lower rates than the Receiver and his counsel.

The Receiver's efforts can be categorized and summarized as follows:

### (i) Interest in P38

12. Through his investigation, the Receiver identified an entity known as P38 Holdings, LLC ("P*38*"), the original ownership of which was held 10% by Wingspan Portfolio Advisors, LLC; 45% by Charles A. Vose III ("*Vose*"); and 45% by TREI II Holdings, LLC ("***TREI II***"). The Receiver further identified TREI II as an entity directly or indirectly controlled by Temme or Stewardship Fund, LP and, as such, a part of the Receivership Estate.

13. On or about August 17, 2011, TREI II agreed to transfer its 45% interest in P38 to Vose (the "***P38 Transfer***"). In consideration for the P38 Transfer, TREI II received from Vose a 5% interest in Stewardship Management, LP, which was held by another entity owned by Vose, Southwest Federation North Texas, LP.

RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEY'S FEES AND EXPENSES

PGDOCS\6301788.1\C071707\0330022

14.     The Receiver does not believe that the P38 Transfer was for reasonably equivalent value and, therefore, believes that the P38 Transfer is an asset of the Receivership Estate.   The Receiver, thus, contacted Vose and reached a settlement whereby Vose agreed to assign his interest in the P38 Transfer to the Receiver; relinquish the 5% partnership interest in Stewardship Management, LP that was transferred to TREI II; and relinquish to the Receiver the $5,264.71 in distributions received from P38 [Dkt. No. 69].

15.     The Receiver received $5,264.71 from Vose and receives periodic small dividends from the Estate's interest in P38.   To date, these distributions have totaled more than $22,537.97.

**(ii)     The Substitute Assets**

16.     The Receiver has acquired a 40% profits interest in approximately 130 Substitute Assets. The Substitute Assets were acquired through a settlement with Stewardship Fund No. 2, L.P., Stewardship Fund No. 3, L.P., Stewardship Fund No. 4, L.P. and Stewardship Fund No. 5, L.P (collectively, the "*Mt. Vernon Entities*").   The Receivership Estate owns a forty percent (40%) limited partnership interest in each of the Mt. Vernon Entities.   The Mt. Vernon Entities acquired assets from one or more of the Defendants through a series of Asset Disposition Agreements that listed certain mortgages that were to be purchased on behalf of the limited partnerships.[1]   However, certain assets described in the Asset Disposition Agreements were not identified in the

---

[1] Currently the Mt. Vernon Entities hold approximately 1,184 assets.  The Receivership Estate will receive distribution from the sale of those assets as they occur.  However, because the Estate's interest is only as a limited partner, the Receiver has no control over the sale of such assets.

original limited partnership agreements (the "***Substitute Assets***"). As such, the Receiver contends that the Estate may have a claim to take title to the Substitute Assets by virtue of a fraudulent conveyance claim. The Mt. Vernon Entity Investors disagree and assert that they are entitled to ownership. Based on the Receiver's potential claim to the Substitute Assets, the Mt. Vernon Entities entered into a settlement whereby the Estate will be granted a 40% profit interest in the Substitute Assets in exchange for the Mt. Vernon Entities' continued efforts to preserve the value of the Substitute Assets. *See* Order Granting Receiver's Emergency Motion to Approve Asset Disposition Agreement [Dkt. No. 63].

### (iii)     Settlement with the Boyce Parties

17.     Through his investigation, the Receiver learned that in 2011, Robert and Elizabeth Boyce and ER, LLC (collectively the "***Boyce Parties***") advanced $1.3 million to one or more of the Defendants. In return, the Boyce Parties received $250,000 in cash, oil and gas leases of undetermined value, and 71 properties (mostly REO). In December of 2011, the Boyce Parties sold 53 of the properties for net proceeds of approximately $650,000, leaving 18 properties in their possession (the Receiver believes that the remaining properties have a value of approximately $50,000).

18.     The Receiver believes that the Estate may have claims against the Boyce Parties arising out of their transactions with the Defendants. Accordingly, the Receiver contacted the Boyce Parties and reached a settlement whereby the Boyce Parties agreed to transfer to the Receiver the 18 properties acquired from Defendants, transfer to the Receiver oil and gas leases relating to approximately 11,709 acres and the associated

overriding royalty interests, and pay the Receiver $50,000 [Dkt. Nos. 80 and 95]. The

Receiver has received the deeds to the REO properties, a $25,000 payment, and the oil

and gas leases, and is awaiting an additional $25,000 payment. The 18 properties

acquired from the Boyce Parties are currently being marketed for sale by Barrier. The

oil and gas interests are currently being marketed for sale by Simplex Energy Solutions.

*See* Dkt. Nos. 174 and 182.

> **(iv)** **The Legacy Assets and Settlements with the Harbour and Cavco**
>
> **Entities**

19. The Receiver has located approximately 450 Legacy Assets and 120

Lakeside Assets that are set to be auctioned for the benefit of the Estate. [Dkt. Nos. 62,

63, and 104]. The Legacy Assets consist of properties that were titled in the name of one

of the Defendants at the time the Receiver was appointed. Upon appointment, the

Receiver took possession of the Legacy Assets and turned them over to Barrier Advisors

to be readied for sale. The Lakeside Assets were acquired through a settlement with the

Harbour and Cavco entities.

20. Through his investigation, the Receiver determined that in July 2008,

Harbour Portfolio I, LLC ("*Harbour I*") and Harbour Portfolio II, LLC ("*Harbour II*")

attempted to purchase from Defendants 221 and 172 distressed real estate mortgages and

corresponding notes for $2,032,395.69 and $1,321,103.80 respectively. As part of the

transaction, each of the mortgages should have been assigned to Harbour I and Harbour II

(and the assignments recorded) and an allonge should have been executed for each note

indicating that Harbour I and Harbour II were the new holders of the notes. Although the

transactions closed in 2008, few, if any, of the mortgage assignments or allonges were ever executed or recorded. As a result, the Receivership claimed an interest in the remaining mortgages and notes owned by Harbour I and Harbour II.

21.  Similarly, in February 2010, Harbour Portfolio IV ("*Harbour IV*") attempted to purchase 199 distressed real estate mortgages and corresponding notes for a purchase price of $645,000, and from March 2009 to June 2010, Cavco Holdings, LLC ("Cavco") attempted to purchase 203 distressed real estate mortgages and corresponding notes for a total purchase price of approximately $917,000. As with Harbour I and Harbour II, Harbour IV and Cavco failed to properly assign and transfer the mortgages and notes. As a result, the Receiver claimed an interest in the mortgages and notes owned by Harbour IV and Cavco.

22.  Based on the Receiver's potential claims, Harbour I, Harbour II, Harbour IV, and Cavco entered into settlement agreements with the Receiver [Dkt. No. 79]. Under the settlement agreements, Harbour I agreed to transfer its interest in eighty (80) mortgages and notes to the Receivership Estate; Harbour II agreed to transfer its interest in thirty-seven (37) mortgages and notes to the Receivership Estate; Harbour IV and the Receiver will divide the net proceeds from sale of Harbour IV's asset, with 40% to the Receivership Estate and sixty percent (60%) to Harbour IV; and Cavco and the Receiver will divide the net proceeds from sale of Cavco's assets, forty percent (40%) to the Receivership Estate and sixty percent (60%) to Cavco.

23.     Based on the Receiver's Settlement with Cavco and Harbor IV, the Estate has received $13,632.42 form Harbour IV and $29,707.30 from Cavco. The Receiver anticipates receiving additional funds in smaller amounts.

24.     The assets received from settlements with the Harbour and Cavco entities have been marketed for sale through Halo Companies, Inc. (*"Halo"*).  Halo has identified a potential buyer (Lakeside Portfolio Management, LLC) for the assets and the Receiver has filed a motion seeking authorization to sell the assets (the *"Lakeside Sales Motion"*). *See* Motion for Authority to Sell Properties to Lakeside Portfolio Management, LLC [Dkt. No. 103]. However, based on objections from investors, the sale of the assets was delayed and the Sales Motions denied. At this time, the Receiver has resolved most of the investors' objections to the Sales Motions and, may re-file the Sales Motions.

### (v)     Anglers and Hunters, Inc.

25.     Through his investigation, the Receiver determined that the Estate has an interest in Angler and Hunters, Inc., a now defunct entity owned or controlled by Temme. Although Anglers and Hunters, Inc. is no longer operating, the Receiver identified a bank account owned by Anglers and Hunters that contained $19,988.36.  The Receiver has acquired the funds in the account and closed the account.

### (vi)     Other Assets of Defendants

26.     Through his investigation, the Receiver has also located a personal retirement account owned by Temme.  Subsequently, the Receiver filed a motion to liquidate the account, which was granted by the Court. [Docket No. 165], resulting in a payment to the Receivership Estate of approximately $64,000.00.

RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEY'S FEES AND EXPENSES

PGDOCS\6301788.1\C071707\0330022

27.     The Receiver has recently become aware of real property in Bonham, Texas in which Temme has an ownership interest.  The Receiver is in the process of evaluating whether it is in the Estate's interest to execute against and/or sell the property.

### (vii)    "Disposed" and "Sold" Assets

28.     The Receiver has located numerous boxes containing asset files for properties that were identified by the Defendants as "disposed" assets and numerous containing asset files for properties that were identified by the Defendants as "sold" assets.  At this time, the Receiver is working with investors to cull, identify, and analyze the "disposed" and "sold" assets.  As this process is ongoing, it is too early to determine if any value can be obtained.

### (viii)    Litigation

29.     The Receiver continues to investigate potential litigation claims.  At this time, the Receiver is in active negotiations with an investor group that the Receiver anticipates will result in a large recovery for the Estate.  The Receiver will continue to investigate other potential claims and will utilize contingency counsel to pursue them if it is in the best interest of the Receivership Estate.

30.     Based on his investigation, the Receiver discovered that, despite massive losses on other ventures, certain entities associated with MC Smith Realty, LLC—MCS Small Cap Fund I, LP, MCS Stewardship No. 2 Invest, LP, and MCS Stewardship No. 3 Invest, LP (collectively, the *"MCS Parties"*)—realized "net profits" that apparently total about $3,000,000 from their dealings with the Defendants.  After extensive negotiations and the exchange of relevant documents, the Receiver determined that it was in the best

interest of the Estate to enter into a Compromise & Settlement Agreement to resolve the claims against the MCS Parties. Under the Settlement, the MCS Parties made a payment of $1,335,000 to the Receiver for the benefit of the Estate.[2]

31.     In addition, the Receiver is investigating potential causes of action against Home Solutions Partners, LP ("HSP"). HSP paid $1,500,000 to certain Defendants to purchase an asset package. The assets were never delivered to HSP. Subsequently, HSP was paid $1,800,000 from certain other Defendants. The Receiver is examining potential causes of action against HSP based on its receipt of a $1,800,000 payment from the Defendants.

32.     Furthermore, through his investigation, the Receiver discovered that certain assets of the Receivership Estate were purportedly conveyed by third-parties Christopher Ganter and HP Debt Exchange, LLC without proper authorization. In response, the Receiver filed his Motion to Show Cause Why Christopher Ganter and HP Debt Exchange, LLC Should Note Be Held in Contempt of Court [Dkt. No. 190]. On July 1, 2013, the Court held Respondents Christopher Ganter and HP Debt Exchange, LLC in contempt and ordered them to pay $450,000 into the registry of the Court on or before 12:00 pm (noon) CST on July 15, 2013 [Doc. No. 209].

33.     Those funds have now been paid and the Receiver is attempting to acquire those funds for the benefit of the Estate.

---

[2] In conjunction with the Settlement, Receiver paid settlement proceeds to cover professional fees and expenses to the law firm of Goldfarb LLP pursuant to the retention agreement with the Receiver in the total amount of $333,750.00 in attorney's fees (or 25% of the $1,335,000.00 settlement payment) plus $210 in expenses.

RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEY'S FEES AND EXPENSES

PGDOCS\6301788.1\C071707\0330022

(b)  **The Novelty and Difficulty of the Questions**.  Many of the tasks reflected in Exhibit A involved factual and legal questions that were of substantial complexity.  Moreover, the Defendants' complete lack of systematic record keeping and failure to complete basic paperwork has substantially hindered the Receiver's efforts.

(c)  **The Skill Requisite to Perform the Service**. The Receiver believes that the services performed in this case have required individuals possessing considerable experience in asset seizure, tracing and liquidation.  The Receiver and BC have considerable experience in such areas and have consulted additional resources where necessary.

(d)  **The Preclusion of Other Employment Due to Acceptance of the Case**.  The Receiver and BC have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e)  **The Customary Fee**.  The hourly rates sought herein are commensurate with, or lower than, the rates charged by other practitioners of similar experience levels in the Eastern District of Texas and actually reflect a discount from the standard rates charged by the Receiver and his counsel.  During the course of these proceedings, both lawyers and paralegals have performed services on behalf of the Receiver with respect to these proceedings.  The timekeepers who have performed services for the Receiver, and their status at BC, are indicated in Exhibit A and in the chart below.  BC Attorney Profiles of lawyers who have performed services for the Receiver are available at www.bryancave.com.  Finally, part of the Receiver's work in this case has been to catalogue thousands of entries concerning the investors, payments, and receipts.  Where possible, non-billable BC staff has been used to complete those duties.  The timekeepers

RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEY'S FEES AND EXPENSES

PGDOCS\6301788.1\C071707\0330022

utilized, their position, their standard rates for 2013, the rate applied here, as well as the amount of any applicable discount, are summarized as follows:

| Name: | Position | Standard Rate 2013 | % of Discount for 2013 | Discounted Rate |
|---|---|---|---|---|
| Keith M. Aurzada | Partner | $550.00 | 21.70 | $430.00 |
| Jay L. Krystinik | Associate | $490.00 | 16.30 | $410.00 |
| Keitha M. Wright | Associate | $430.00 | 8.2 | $395.00 |
| Bradley J. Purcell | Associate | $350.00 | 8.60 | $320.00 |
| Corey Slagle | Associate | $490.00 | N/A | N/A |
| Candace Gaston | Associate | $305.00 | N/A | N/A |
| Cindy Francisco | Litigation Support | $185.00 | N/A | N/A |
| LeEtta Detrich | Legal Assistant | $150.00 | 27.6 | 110.00 |

(f) **Whether the Fee is Fixed or Contingent**. The Receiver's and BC's fees are fixed insofar as monies exist by way of Receivership Assets from which to pay such fees. Payment of such fees, however, is subject to Court approval.

(g) **Time Limitations Imposed by the Client or Other Circumstances**. The time requirements during the period covered by this Application have been substantial.

(h) **The Experience, Reputation and Ability of the Attorneys**. BC has several attorneys who specialize exclusively in the practice of civil trial law. The practice of those attorneys regularly includes the representation of bankruptcy trustees and receivers. The reputation of BC's attorneys is recognized and respected in their community in Texas.

(i) **The Undesirability of the Case**. The representation of the Receiver incident to this case has not been undesirable.

(j) **The Nature and Length of the Professional Relationship with the Client**. BC did not represent the Receiver in these proceedings prior to being retained in these proceedings.

PAGE 14

(k)     **Award in Similar Cases**.   BC believes that the fees requested in this case are less than or equal to those which have been awarded in similar cases in this District.

**WHEREFORE**, the Receiver respectfully requests that the Court allow the requested compensation for professional services and expenses rendered by the Receiver and his legal counsel, and authorize the Receiver to pay BC $154,793.42, representing $149,911.60 in interim fees (80% of $187,389.50 in fees) and $4,881.82 in interim expenses (100% of $4,881.82) for the time period from January 1, 2013 through May 31, 2013.

Dated: August 30, 2013                                Respectfully submitted:


_____//s// Keith Miles Aurzada_____
Keith Miles Aurzada, Receiver

2200 Ross Avenue, Suite 3300
Dallas, Texas  75201
Telephone:  214.721.8041
Facsimile:  214.721.8100


## CERTIFICATE OF CONFERENCE

I hereby certify that, in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission, I delivered the invoices attached to the foregoing and the Standardized Fund Accounting Report as Exhibits A and B respectively to David B. Reece, counsel for the Commission.  Additionally, my counsel has discussed the relief requested with David B. Reece, and has been advised that the Commission does not object to the relief requested.  Therefore this matter is present to the Court for determination.


_____//s// Keith Miles Aurzada_____
Keith Miles Aurzada, Receiver

## CERTIFICATE OF SERVICE

I certify that on August 30, 2013, I served a true and correct copy of the foregoing pleading by electronic mail through the Court's CM/ECF system to all parties consenting to service through same, including to counsel for the SEC, the Defendants, and all others consenting to service through same.

Moreover, the foregoing will be uploaded to www.stewardshipfundreceivership.com

_____//s// Keith Miles Aurzada_____
Keith Miles Aurzada

RECEIVER'S THIRD INTERIM APPLICATION TO ALLOW AND PAY (1) RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEY'S FEES AND EXPENSES

PGDOCS\6301788.1\C071707\0330022