**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § § § § | |
| *Plaintiff,* | | |
| V. | § § | CASE NO. 4:11-CV-655 |
| JAMES G. TEMME and STEWARDSHIP FUND, LP | § § § § § | Judge Clark/Judge Mazzant |
| *Defendants.* | | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the reports of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On November 4, 2013, the report of the Magistrate Judge was entered containing proposed findings of fact and recommendations that the Receiver's Motion to Approve Settlement Agreement with Halo Companies, Inc. [Doc. #244] be granted [Doc. #290]. On November 18, 2013, non-parties Bruce Berg, Stuart Cartner, Kevin Doyle, Walter Haydock, Edward Leh, Kevin Murphy, Philip Schantz, DAIS Partners, LP, Singer Bros., LLC, Skeleton Lake, LLC, and Wildcat Lake Partners [the "Berg Group"] filed objections [Doc. #295]. On December 20, 2013, Stewardship Receivership Claimants Association filed objections [Doc. #301]. On January 27, 2014, the Receiver filed a response to the objections [Doc. #314]. On February 5, 2014, a reply was filed by the Berg Group [Doc. #326].

1

This motion addresses the proposed settlement with the Halo Companies, Inc. that has been proposed by the court-appointed Receiver. After the motion was filed and after the Stewardship Receivership Claimants Association (the "Association") filed objections to the motion, the Magistrate Judge entered an order that provided as follows:

> The court does not have enough information to make a decision that the approval of this settlement would be in the best interest of the estate. The Association asserts the following:
>
>> Here, the settlement with Halo as proposed in the Motion does not appear to be in the best interests of the estate. In fact, a significant concern with the Motion is that it fails to articulate for the court and other interested parties the values of the assets subject to the settlement. The Receiver wholly fails to identify the value of (1) the two classes of Halo stock he is offering in settlement, (2) the AMX software or its enterprise value and use, or (3) the several claims he intends to release. Regarding AMX, the Receiver has apparently negotiated only a limited license for his own use, despite the fact that the estate has a claim to ownership of the software.
>
> The Association also asserts the following: (1) that the Receiver has offered no evidence regarding the value of the stock the estate holds in Halo; (2) the Receiver has not identified or explained the potential claims between the estate and Halo, their value, or their viability; (3) the Receiver has offered no evidence of Halo's financial condition; and (4) the Receiver has offered no evidence regarding the value of AMX software which Halo claims to own. The court shares some of these concerns and needs answers before deciding how to proceed. The Receiver should addresses each of these concerns in the reply [Doc. #262].

The Receiver then filed a reply that addressed these concerns [Doc. #268]. After considering all of the briefing on this matter, the Magistrate Judge found that its questions had been sufficiently answered and that the settlement should be approved as being in the best interest of estate. The

Magistrate Judge also found that no further hearing on this matter was necessary [Doc. #290].

The Receiver seeks the Court's approval of a settlement agreement (the "Settlement") with Halo Companies, Inc. ("Halo"). The Receiver believes that the Settlement is in the best interest of the estate and will maximize the recovery for the investors in the Receivership Entities. Under the terms of the Settlement: Halo will transfer to the Receiver $250,000 by checks payable to "Keith Aurzada, Receiver" payable in monthly increments of $20,833.33 for twelve months; Halo will provide the Receiver with continued access to and use of the AMX[1] or other systems for the duration of receivership proceedings and Halo will not bring a claim for administrative expense for use of the AMX System; The Receiver will return to Halo the Shares; Halo will release any claims it may have against the Receivership Estate arising from their business dealings with the Receivership Entities and the Receiver shall release Halo from any claims relating to any transactions or business dealing with the Receivership Entities; and the Court would enter an Order permanently barring or enjoining all Stewardship Creditors from commencing or continuing any legal proceeding against Halo arising out of or in connection with the investments made in any Receivership Entity by the Stewardship Creditors, and any transfers received by Halo from the Receivership Entities.

Only two groups of investors filed objections to the report, the Berg Group, and the Association [Doc. #295, #301]. The objections for the most part merely rehash the same arguments presented in the original objections and sur-replies to the original motion to approve.

In their objection, the Berg Group alleges that the bar order requested in the motion is not justified because it fails to grasp the nature and merit of investor claims against Halo. The

---

[1] AMX is a software platform that houses and tracks information related to the properties and mortgages that are serviced by Halo.

Receiver responds that he has included potential claims of investors against Halo in his analysis and has concluded that the Settlement is in the best interest of the investors. The Receiver points out that the Berg Group filed claims against Halo and its officers and affiliates in state court, seeking damages in excess of $5,000,000, but that as of December 18, 2013, all claims asserted by the Berg Group against Halo have been dismissed with prejudice because the court found no evidence to support them. Although the Berg Group points out that they believe the state judge erred in dismissing these claims and reconsideration is being requested, the point of the matter is that at first blush a state judge found that there was no evidence to support claims against Halo. The Receiver believes that other claims by investors will likely meet with the same critical flaws and, therefore, believes that the Settlement is in the best interest of investors.

The objections also raise concerns about the issue of AMX. The Receiver has identified many problems the Receivership Estate will face if it alleges an ownership interest in the AMX software platform, including that the coding was performed entirely by a Halo employee, AMX is housed on Halo servers and is maintained by Halo, no documentary evidence in the Receiver's possession provides support for the Receivership Estate's claim to AMX, and neither the Association nor James Temme ("Temme") have provided the Receiver with any documentary evidence supporting a claim to AMX.

The Receiver also asserts that there is a Software License Agreement dated July 13, 2011, between Halo and Equitas Housing Fund III, LP that provides "all rights, title and interest in, to and under the System [defined to specifically include AMX] wherever resident and on whatever media shall remain the sole and exclusive property of Halo." The Software License Agreement is signed by Temme as manager of Stewardship Fund, LP. The court agrees that the Receiver has

properly evaluated the Receivership Estate's potential claim to ownership of AMX and has determined that pursuing such a claim is not in the Receivership Estate's best interest.

The objections also assert that the Halo stock that is being held by the Receivership Estate that would be returned to Halo under the Settlement is not in the best interest of the Receivership Estate. The Association objects to the Settlement on the grounds that the Halo stock in the Receiver's possession is worth over $9 million and, therefore, the Settlement payment of $250,000 is insufficient. Under the Settlement, the Receiver will return to Halo 17,808,000 shares of Halo common stock and 90,000 shares of Series X stock. The Association asserts that the common stock is worth $.49 per share and, therefore, has a value in excess of $8.7 million.

Since January 21, 2013, Halo stock has been trading at $.05 per share or less. Indeed, from June 24, 2013, to August 12, 2013, Halo stock was trading below $.01 per share. The $.49 per share price is based on a single sale of only 100 shares of Halo stock in mid-August 2013. Based on the historical prices for Halo stock, the Receiver believes that the actual market price for Halo stock is less than $.01. The Receiver also believes that the sale of over 17 million shares would inundate the market, driving the price of Halo common stock back to less than $.01 per share.

The Receiver also has concerns that the Receivership Estate's claim to the Halo stock may be dubious. The Receivership Entities acquired the Halo common stock through their ownership in Equitas Asset Management, LLC ("Equitas"). On or about December 13, 2010, Halo entered into an agreement in which it provided 21,200,000 shares of Halo common stock to Equitas in exchange for certain guaranteed performance metrics. The agreement provided a claw-back provision that required Equitas to return the Halo common stock if Equitas did not

generate certain cash-flow requirements. No cash was ever remitted to Halo under the agreement and, as a result, on August 25, 2011, Halo demanded the return of its common stock from the members of Equitas. Despite this demand, Temme did not relinquish the 17,808,000 shares of Halo common stock in his possession before the Receiver was appointed. The Receiver has evaluated the Estate's ownership claim to the Halo common stock, the cost to litigate ownership of the Halo common stock, the likely outcome of any such litigation, and the likely sales price of the Halo common stock and determined that the value of the Halo common stock to the Estate is less than $250,000.

Halo has also issued Series E stock that is likewise senior to Halo's common stock and Series Z stock that "has liquidation and other rights in preference to all other equity investments." The Series X stock is not voting stock, has no redemption rights, and is not transferrable. As a result, the Receiver cannot liquidate the Series X stock and cannot monetize it unless and until Halo decides to redeem the stock or it is liquidated.

The court finds that the Receiver has sufficiently evaluated the value or viability of its claims against Halo and the value of the stock. The Receiver's concerns regarding the viability of claims against Halo and valuation of the Halo stock have not been alleviated, nor has the Association provided sufficient argument or evidence to overcome such concerns. Any claims pursued by the Receivership Estate would come at a significant cost. Any claims pursued by the Receivership Estate would lack documentary support because the Receiver has not located any documents evidencing a loan from Stewardship Fund to Halo, describing the purpose of payments to Halo, or providing any direct evidence supporting a claim against Halo. The Receiver has found no promissory notes or other negotiable instruments in favor of the

Receivership Estate payable by Halo.  Thus, any claims pursued by the Receivership Estate would lack testimonial evidence because the critical witness would be Temme, who has asserted his Fifth Amendment privilege.

There is also an objection to the Settlement on the grounds that the Receiver does not identify or value the potential claims between the Receivership Entities and Halo.  The Receiver has evaluated the potential costs and recovery of any potential claim against Halo and believes that there is little likelihood of success.  The Receiver's opinion is that litigation against Halo would expose the Estate to significant litigation costs and substantial legal hurdles to proving any claim.  The Receiver also believes that any such claims would suffer from a lack of evidence.  Most of the transactions between Halo and the Receivership Entities were not properly documented. As a result, the Receiver will need to rely extensively on testimonial evidence to prove the Receivership Estate's claims against Halo, as well as defending against potential claims asserted by Halo.  The problem is that most of the interactions between Halo and the Receivership Entities were verbal conversations between Temme and Cade Thompson, the CEO of Halo.  Temme has refused to testify in this matter and has asserted his Fifth Amendment privilege.  The informal meetings between the Receiver and Temme have not yielded any evidence supporting any claims against Halo.

The most significant potential claim between the Receivership Entities and Halo that the Receiver has evidence to support relates to approximately $1.2 million in funds transferred from the Receivership Entities to Halo in 2010 and 2011. Based on the timing of the transfers of funds and the relationship between the Receivership Entities and Halo, the Receiver has alleged a fraudulent transfer claim against Halo in the amount of $1.2 million. Halo claims that the

majority of the $1.2 million was payment for services rendered and expenses incurred by Halo and that the remaining funds were provided in exchange for the Series X stock. The Receiver would bear the burden of establishing that the funds transferred to Halo were in the form of a loan rather than payments on an antecedent debt. The Receiver has reviewed the electronic files of the Receivership Entities, including email accounts, servers, and laptops, and has found no documentation supporting the allegation that the funds provided to Halo were in the form of a loan.

The Receiver has not located any loan documents, loan proposals, or other documents evidencing a loan between the Receivership Entities and Halo. The only evidence that the funds transferred to Halo were in the form of a loan is the representations of Temme, who has asserted his Fifth Amendment right. Halo has provided the Receiver with invoices for services rendered that are consistent with the payments sent to Halo. The funds transferred from the Receivership Entities to Halo were made in twenty six (26) wire transfers made over the course of nine months, from April to December 2011, often two or three payments per month. The payment amounts were inconsistent and ranged from $1,100 to $100,000. The documents that would support a loan claim would be emails between Temme and Cade Thompson. The Receiver concludes that these email exchanges are ambiguous and would not meet the burden of proving an actual loan.

The court also agrees that obtaining a judgment against Halo will likely take several years, and the Receiver has serious doubts about Halo's ability to pay any such judgment. The Receiver has evaluated the evidence supporting any potential claims against Halo, the potential recovery, and the time and money required to pursue such claims and believes that the Settlement

represents a far greater recovery for the Receivership Estate.

In addition, Halo has potential claims against the Receivership Estate that are released as part of the Settlement. Halo is waiving its claim to $375,000 in fees owed by the Receivership Estate, waiving any fees it could charge in connection with the use of AMX, and waiving its potential claim for breach of the Assignment and Contribution Agreement.

In the Settlement, the Receiver seeks to enjoin creditors and investors in the Receivership Entities from commencing or continuing any litigation against Halo related to the investments in the Receivership Entities or transfers made from the Receivership Entities to Halo. To the extent that third parties have claims against Halo that are independent of their investment in the Receivership Entities or transfers between Receivership Entities and Halo, such claims are not subject to the bar order. However, to the extent that a third party has claims from an investment in the Receivership Entities or transfers between Receivership Entities and Halo, such claims are property of the Receivership Estate or will have a significant and substantial impact on the Receivership Estate and may be enjoined, and the claims will be resolved through the Receivership claims process.

Finally, it should be noted that the only investors to file objections to the Settlement are the Berg Group and the Association. As of January 27, 2014, 167 claims have been filed against the Receivership Estate. The Berg Group includes only eleven investors. As of September 2013, the Association claimed to represent the interest of approximately 65 investors. The Receiver also points out that an unknown number of members of the Association are not "beneficiaries" of the Estate because they are insiders of the Receivership Entities or were "net winners" in their transactions with the Receivership Entities. Thus, most of the possible claimants or beneficiaries

are not currently objecting to the Settlement.

The Receiver noted that "[a]lthough the Receiver acknowledges that his decision is a judgment call and that certain assumptions and evaluations may not ultimately prove correct if he were to proceed with litigation against Halo, the Receiver has determined in his professional judgment that the Settlement represents the best outcome for the Estate." The Receiver was appointed to make evaluations subject to court approval. The Magistrate Judge found that the settlement should be approved. After reviewing the relevant pleadings, the court agrees with the Magistrate Judge that the Settlement is in the best interest of the Receivership Estate.

Having received the report of the United States Magistrate Judge, and considering the objections thereto filed by the Berg Group and the Stewardship Receivership Claimants Association, this court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report as the findings and conclusions of the court.

It is therefore **ORDERED** that the Receiver's Motion to Approve Settlement Agreement with Halo Companies, Inc. [Doc. #244] is **GRANTED**.

So **ORDERED** and **SIGNED** this **30** day of **March, 2014.**

_____
Ron Clark, United States District Judge