IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:11-cv-655 |
| | § | |
| | § | |
| JAMES G. TEMME, and | § | |
| STEWARDSHIP FUND, LP, | § | |
| Defendants. | § | |

**RECEIVER'S FINAL APPLICATION TO ALLOW AND PAY (1)
RECEIVER'S FEES AND EXPENSES; AND (2) ATTORNEYS' FEES AND EXPENSES**
(From January 1, 2016 to December 31, 2016)

Keith M. Aurzada as Receiver (the "*Receiver*") for James G. Temme, Stewardship Fund, LP, and all other entities directly or indirectly controlled by James G. Temme or Stewardship Fund, LP, including but not limited to, Stewardship Advisors, LLC, d/b/a Stewardship Advisors, LP, Stewardship Asset Management Genpar I, LLC, Stewardship Group, LLC, Destiny Fund, LP and Stewardship Management, LP (collectively, the "*Defendants*"), hereby files his Final Application to Allow and Pay (1) Receiver's Fees and Expenses and; (2) Attorneys' Fees and Expenses and, in support of such, would respectfully show unto the Court as follows:

BACKGROUND

1.     Prior to the initiation of the above-captioned action by the Securities and Exchange Commission ("*Commission*"), Defendants raised at least $35,000,000 from various investors seeking to purchase distressed residential mortgage loans and REO properties. In offering and selling the loans and properties, the Defendants represented to investors that the

offerings and proceeds would be used to buy properties/mortgages at deeply discounted values, and that the properties/mortgages would be improved to be leased or resold at a profit.

2. As the Receiver has conducted his investigation, it has become apparent that the Defendants' means of acquiring properties was to obtain funds from various groups or individuals to invest in limited partnerships in which the general partner would acquire, at a discount, tapes of distressed, non-performing mortgage loans.

3. In the spring of 2011, Defendants' scheme collapsed, payments to investors ceased, and lienholders began foreclosure proceedings on the properties acquired and held by the Defendants. Many of the properties are in dilapidated conditions. Moreover, it is difficult to tell from the Defendants' records how the properties were acquired, the consideration paid for each of the properties, and the complete transactional history with respect to each property. Moreover, many of the properties were, and remain, delinquent on ad valorem taxes and have been lost to foreclosure.

4. At the time the Receiver was appointed, the Defendants' bank accounts contained nearly nothing. Based on the Receiver's recovery efforts, on July 23, 2015, the Receiver made an interim distribution to investors in the amount of $950,000. Because the Receiver distributed $950,000 to investors, as of December 31, 2015, the balance of the Receiver's liquid accounts totaled $578,058.

5. On October 24, 2016, the Receiver filed his Motion for Authority to Abandon Assets, Close Receivership, and Destroy Records [Dkt. No. 403]. In the Motion, the Receiver sought Court approval to (1) abandon all remaining assets of the Estate;[1] (2) make a final

---

[1] The Receiver did not abandon two assets: (1) settlement payments from American Equity Funding; and (2) settlement payments from Halo Asset Group. Since filing the Motion, American Equity Funding made its last settlement payment. The Receiver is in discussions with Halo regarding its final settlement payments.

distribution to investors; (3) close the administration of the Estate; and (4) transfer or destroy the records of the Estate.  The Court approved the Motion [Dkt. No. 405].

6. On March 8, 2016, the Receiver filed his Eighth Interim Application to Allow and Pay (1) Receiver's Fees and Expenses and; (2) Attorneys' Fees and Expenses (the "**Eighth Fee Application**"), seeking the approval and payment of fees for the period ending on December 31, 2015.  In the Eighth Fee Application, the Receiver estimated that he would incur fee of $50,000 or less to close the Estate.  Since that time, the Receiver has incurred $22,485.00 in fees and $842.19 in expenses (for a total of $23,327.19) in the administration of the Estate.  By this Motion, the Receiver seeks approval of the fees and expenses incurred from January 1, 2016 through the date of this Motion, as well as estimated fees and expenses to be incurred from the filing of this Motion to December 31, 2016.  The Receiver estimates that $5,000 in additional fees and $200 in expenses[2] will be incurred from the filing of this Motion to the end of the year.  For a total of $31,312.99 in fees and expenses to close the administration of the Estate.

## APPLICATION FOR FEES AND EXPENSES
## OF THE RECEIVER AND HIS ATTORNEYS

7. This Application seeks the approval and payment of fees and reimbursable expenses for the Receiver and Bryan Cave LLP ("**BC**") for the time period from January 1, 2016 through December 31, 2016 (the "**Relevant Period**").

8. During the period covered by this Application, the Receiver has incurred fees and expenses with respect to his activities and those of BC as to these proceedings on a monthly basis as follows:

---

[2] The estimated expenses are the costs of printing and distributing the final distribution checks to 174 investors.

| Month | Fees | Expenses |
|---|---:|---:|
| January 2016 | $ 1,494.00 | $ 30.50 |
| February 2016 | $ 1,498.00 | $ 0 |
| March 2016 | $ 1,119.00 | $ 9.00 |
| April 2016 | $ 550.00 | $ 33.00 |
| May 2016 | $ 1,155.00 | $ 510.20[3] |
| June 2016 | $ 726.00 | $ 6.20 |
| July 2016 | $ 1,143.00 | $ 59.60 |
| August 2016 | $ 6,532.00 | $ 85.40 |
| September 2015 | $ 2,349.00 | $ 47.15 |
| October 2015 | $ 4,017.00 | $ 61.10 |
| November 2015 | $ 1,902.00 | $ 0 |
| December 2015 | $ 7,784.00[4] | $ 201.80[5] |
| **Total:** | **$30,269.00** | **$1,043.99** |

**Exhibit A**, which is attached and incorporated for all purposes, conveys the following information for the time period January 1, 2016 through December 14, 2016: (a) the number of hours worked by each attorney and staff member on a particular day; (b) the manner and type of work performed by each attorney and staff member; (c) the customary billing rate for each person rendering service in this matter; (d) the monetary value assigned to each task performed by a given attorney and/or staff member; and (e) each expense item incurred.  Each of the

---

[3] Includes a $500.00 annual storage fee charged by Elite Document Technology for the storage of all digital records of the Estate.

[4] Includes estimated $5,000 in fees after the filing of this Motion.

[5] Includes estimated $200 in expenses after the filing of this Motion.

invoices attached as Exhibit A reflect aggregate expenses by category during a given month. A summary of the time billed by each task code is also included at the end of the invoices.

9. The fees and costs incurred by the Receiver during the Relevant Period are the minimum necessary for the continuing administration of the Estate. For example, the Receiver and his counsel receive regular inquiries from the municipalities and county governments requesting information on properties that are or have been titled in the name of the Receivership Entities. The Receiver also regularly receives inquiries from investors seeking requests for title curative work, inquiries about additional distributions, and requests for further information about the status of the case.

## JOHNSON FACTORS

10. In support of this request for compensation and reimbursement of expenses, the Receiver respectfully directs this Court's attention to those factors generally considered by courts in awarding compensation to professionals for services performed in connection with the administration of a receivership estate. As stated by the Fifth Circuit Court of Appeals in *Migis v. Pearle Vision. Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998), "The calculation of attorneys fees involves a well-established process. First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. In making a lodestar adjustment the court should look at twelve factors, known as the Johnson factors, after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." Those factors, as applied to the services rendered in this case by the Receiver and BC, are addressed below.

     (a)    **The Time and Labor Required**

11.    The Receiver and BC respectfully refer to **Exhibit A**, which details the involvement of the Receiver and BC's attorneys in this case during the period covered by this Application. The Receiver has endeavored to keep costs and fees down by, when possible, using secretarial assistance by employees who do not bill for their time, and by using paralegal staff who bill at lower rates than the Receiver and his counsel.

12.    The Receiver's efforts for the relevant period can be categorized and summarized as follows:

     **(i)**    **Asset Disposition**

13.    The Receiver and his staff spent time reviewing and executing title documents.

     **(ii)**    **Asset Analysis and Recovery**

14.    The Receiver and his staff spent time researching the chain of title for various properties as requested, and entered into an Asset Recovery and Fee Agreement with ClaimsCorp, Inc., anticipating the recovery of surplus funds from tax sales of any properties owned by the Receivership Estate, nationwide.

     **(ii)**    **Claims Administration**

15.    The Receiver and his staff spent time communicating with investors regarding their approved claim amounts and the distributions received on account of the same.

     **(iii)**    **Administration of the Estate**

16.    The Receiver and his staff also spent substantial time each week administering the Estate. On a daily basis, the Receiver receives mail addressed to the Defendants regarding assets that the Defendants own, service, previously owned, or previously serviced. This includes municipal ordinance violation notices, tax notices, foreclosures notices, utility bills, lawsuits

related to the property, requests for information, and other similar notices and mail. The Receiver's staff must open, identify, catalogue, and (when appropriate) respond to such mail.

17. The Receiver and his staff also respond to daily phone calls and emails from parties affected by the Defendants and Receivership. Such inquiries often involve inaccurate or incomplete title documents, misappropriated escrow payments, overdue ad valorem taxes or threats of foreclosure, transfers of servicing rights, and the sale of mortgages and promissory notes to other entities. These inquiries often require considerable time to resolve because, as previously noted, the Defendants' business records are incomplete or non-existent.

(b) **The Novelty and Difficulty of the Questions**. Many of the tasks reflected in Exhibit A involved factual and legal questions that were of substantial complexity. Moreover, the Defendants' complete lack of systematic record keeping and failure to complete basic paperwork has substantially hindered the Receiver's efforts.

(c) **The Skill Requisite to Perform the Service**. The Receiver believes that the services performed in this case have required individuals possessing considerable experience in asset seizure, tracing and liquidation. The Receiver and BC have considerable experience in such areas and have consulted additional resources where necessary.

(d) **The Preclusion of Other Employment Due to Acceptance of the Case**. The Receiver and BC have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e) **The Customary Fee**. The hourly rates sought herein are commensurate with, or lower than, the rates charged by other practitioners of similar experience levels in the Eastern District of Texas and actually reflect a discount from the standard rates charged by the Receiver and his counsel. During the course of these proceedings, both lawyers and paralegals have

performed services on behalf of the Receiver with respect to these proceedings. The timekeepers who have performed services for the Receiver, and their status at BC, are indicated in Exhibit A and in the chart below. BC Attorney Profiles of lawyers who have performed services for the Receiver are available at www.bryancave.com. Finally, part of the Receiver's work in this case has been to catalogue thousands of entries concerning the investors, payments, and receipts. Where possible, non-billable BC staff has been used to complete those duties.

(f)     **Whether the Fee is Fixed or Contingent**. The Receiver's and BC's fees are fixed insofar as monies exist by way of Receivership Assets from which to pay such fees. Payment of such fees, however, is subject to Court approval.

(g)     **Time Limitations Imposed by the Client or Other Circumstances**. The time requirements during the period covered by this Application have been substantial.

(h)     **The Experience, Reputation and Ability of the Attorneys**. BC has several attorneys who specialize exclusively in the practice of civil trial law. The practice of those attorneys regularly includes the representation of bankruptcy trustees and receivers. The reputation of BC's attorneys is recognized and respected in their community in Texas.

(i)     **The Undesirability of the Case**. The representation of the Receiver incident to this case has not been undesirable.

(j)     **The Nature and Length of the Professional Relationship with the Client**. BC did not represent the Receiver in these proceedings prior to being retained in these proceedings.

(k)     **Award in Similar Cases**. BC believes that the fees requested in this case are less than or equal to those which have been awarded in similar cases in this District.

**WHEREFORE**, the Receiver respectfully requests that the Court allow the requested compensation for professional services and expenses rendered by the Receiver and his legal

counsel, and authorize the Receiver to pay BC $31,312.99, representing $30,269.00 in fees and $1,043.99 in expenses for the time period from January 1, 2016 through December 31, 2016.

Dated: December 22, 2016                        Respectfully submitted:

                                               *//s// Keith Miles Aurzada*
                                               Keith Miles Aurzada, Receiver

                                               2200 Ross Avenue, Suite 3300
                                               Dallas, Texas  75201
                                               Telephone:  214.721.8041
                                               Facsimile:  214.721.8100

## CERTIFICATE OF CONFERENCE

I hereby certify that, in accordance with the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission, I delivered the invoices attached to the foregoing and the Standardized Fund Accounting Report as Exhibits A and B respectively to David B. Reece, counsel for the Commission. Therefore this matter is present to the Court for determination.

                                               *//s// Keith Miles Aurzada*
                                               Keith Miles Aurzada, Receiver

## CERTIFICATE OF SERVICE

I certify that on December 22, 2016, I served a true and correct copy of the foregoing pleading by electronic mail through the Court's CM/ECF system to all parties consenting to service through same, including to counsel for the SEC, the Defendants, and all others consenting to service through same.

Moreover, the foregoing will be uploaded to www.stewardshipfundreceivership.com

                                               *//s// Keith Miles Aurzada*
                                               Keith Miles Aurzada